THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RUSSELL THOMPSON *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1916.*

1. CRIMINAL LAW—*party may be convicted of receiving stolen property though he advised the theft.* One indicted for receiving stolen property may be convicted on such charge even though the proof shows that he persuaded another person to steal the property and deliver it to him.

2. SAME—*what fact does not preclude conviction for receiving stolen property.* Where two persons are indicted, jointly, for receiving stolen property, both may be convicted though the proof shows that the person who stole the goods delivered the same in a suit-case to one of the defendants and then went with him to a place where they met the other defendant and turned the suit-case containing the stolen goods over to him.

3. SAME—*when naming witness in instruction is not error.* An instruction upon the subject of conviction upon the testimony of an accomplice is not rendered erroneous in naming the accomplice, where she was the only accomplice who testified in the case.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES M. THOMSON, Judge, presiding.

CHARLES E. ERBSTEIN, and CHARLES P. R. MACAULAY, for plaintiff in error Russell Thompson.

CHARLES HUGHES, for plaintiff in error Arthur Barrett.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, GEORGE P. RAMSEY, and D. E. DETRICH, (EDWARD E. WILSON, and JAMES C. O'BRIEN, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiffs in error, Russell Thompson and Arthur Barrett, together with Julius Friedlander, were jointly indicted and tried in the criminal court of Cook county under an indictment charging the defendants in one count with the

larceny of certain jewelry and silverware, the property of
Mrs. Harriet Clifton, of the value of $800, and in another
count with having received said property for their own gain
knowing it to have been stolen property and with intent to
prevent the owner from again possessing her property. By
direction of the court Friedlander was found not guilty.
The jury returned two separate verdicts,—one finding the
plaintiff in error Thompson guilty of having received stolen
property of the value of $800; the other finding plaintiff in
error Barrett guilty of having received stolen property of
the value of $400. Motions for a new trial and in arrest
of judgment were made by both defendants found guilty.
The court overruled the motions, rendered judgment on the
verdicts and sentenced defendants to imprisonment in the
penitentiary. They have sued out a writ of error from this
court to review the judgment.

Alfreda Nelson, a young woman twenty-one years old,
was the principal witness for the prosecution. She en-
tered the employment of the Clifton family, who resided
at 851 Ingleside place, Evanston, about April 5, 1915, as a
servant. On July 6 the Clifton family went away for a
vacation, leaving the house in charge of servants, and did
not return until July 25. Jewelry and silverware were kept
in a closet in the nursery and were accessible to Alfreda
Nelson. When the family returned from their vacation
Mrs. Clifton discovered the jewelry and silverware kept in
the closet had been stolen. The theft was reported to the
police and resulted later in the arrest of plaintiffs in error.
Alfreda Nelson was not indicted with them and testified as
a witness for the prosecution on the trial. The substance
of the most material parts of her testimony was that she
had known the plaintiff in error Thompson for some time.
He had on different occasions escorted her to places of
amusement and she had considerable attachment for him.
Thompson introduced her to plaintiff in error Barrett at an
amusement park some two weeks before the theft but gave

to Barrett the name of Smith. The witness told Thompson
where she was staying, and he inquired if the Cliftons were
rich, and she said they were. About two weeks later, and
in the evening of the next day after the departure of the
Clifton family on their vacation, Thompson visited the wit-
ness at the Clifton residence. The witness testified she had
previously that evening met Thompson by appointment at a
place designated; that Thompson told her when they met
he had a machine and they would take a ride. She went
with him to the car, which was in charge of a chauffeur,
and Barrett was also in the car. She and Thompson en-
tered the car and they drove a short time, and when about
one-third of a mile from the Clifton residence she and
Thompson left the car and walked to the residence. While
they were at the residence, or sometime while they were
together during the evening, Thompson asked the witness
why she did not take some of Mrs. Clifton's property. He
told her the Cliftons were rich and did not need it and that
the witness was poor. The witness said that would not be
right, and Thompson said they would never know it. The
witness consented to take the jewelry, went to the closet
where it was kept, procured it and gave it to Thompson.
He expressed some dissatisfaction and inquired why she
did not get more property, and the witness said she was
afraid of awakening the servants, but promised Thompson
if he would meet her the next day at Noyes street station,
in Evanston, she would bring him more property. The next
day the witness took several boxes containing silverware
from the closet, placed them in a suit-case belonging to her
and met Thompson by appointment at the elevated station.
She delivered the suit-case to him containing the silverware
and they rode on the train to another station, where they
met Barrett. The suit-case was delivered to him. The wit-
ness and Thompson remained on the train but Barrett did
not go with them. He said he would follow on a surface
car. Witness and Thompson left the train at Division and

Clark streets and went to a candy store, and Thompson told witness he was going to sell the goods to Sam Solly and give her two-thirds of the proceeds. While they were at the candy store witness saw Barrett pass but did not speak to him. Witness and Thompson stayed around there all afternoon, waiting for Solly, who did not come. Finally Thompson suggested their staying around there might cause suspicion and proposed they go to a near by hotel, which they did, and Thompson registered and secured a room, to which they went. Thompson left the room, saying he was going out to see if Solly had come back. After about fifteen minutes witness left the room and went down-stairs, where she met Thompson. He said Solly had not come but the clerk had advanced him $20 on the silverware and jewelry, and he gave her $10. Thompson said he would get the rest the next day. Witness, Thompson and Barrett then walked together to an elevated station, where the witness took the train and separated from Thompson and Barrett. About four days later witness saw Thompson and inquired if he had received the money yet, and Thompson said he had not. At two different times the witness went to the pawnshop which she understood from Thompson Solly was connected with, and inquired for Solly and also for Thompson and Barrett. She was informed at the pawnshop that Solly was not known there nor was Thompson or Barrett. The witness later made some unsuccessful efforts to get in communication with Thompson. She never received any money but the $10 and never received her suit-case the silverware was in when she delivered it to Thompson.

Thomas W. Young, an investigator or detective, testified Thompson told him at the Palmer House, the latter part of April or the first of May, 1915, that he had a pretty job he thought he would pull off in Evanston; that there was a wall-safe in a house there, which he did not name, that was not locked, and all anyone had to do was to walk in and get the stuff. He said he thought it would be good

picking. He told the witness that if at any time the witness had a job he thought could be pulled off and a girl could be used, he (Thompson) had a girl that could be used for that purpose.

Mrs. Clifton testified as to the jewelry and silverware that was taken from her house. She described jewelry which she testified was of the value of $335, and said there were other articles consisting of odd rings and stick pins, some of which were not of very great value. She described also the character and amount of the silverware but did not testify as to its separate value. She testified that all the property stolen she estimated to be of a value of from $800 to $1000.

Barrett did not testify but Thompson did. He admitted an acquaintance with Alfreda Nelson and that he had introduced Barrett to her. He denied everything Alfreda Nelson testified to connecting him with the theft of or receiving the stolen property, and denied he knew of or had anything to do with the theft or disposal of the property.

Plaintiffs in error, Thompson and Barrett, were represented on the trial and in this court by separate counsel, and each contends the evidence was insufficient to warrant a verdict of guilty. Plaintiff in error Thompson contends that if the evidence was sufficient to convict him he could only have been convicted of larceny, for the reason that one who steals property cannot also be convicted of the crime of receiving it. Both Thompson and Barrett insist that as they were jointly indicted for receiving stolen property they could not be separately found guilty; that to sustain a conviction the proof must have shown a joint receipt of the property and the verdict must have been joint as to both of them. Barrett further contends that if the proof shows him guilty of receiving stolen goods or property it shows he received it from the party who received it from the one who stole it, and that a conviction for receiving stolen property cannot be sustained in such a case.

If the jury believed the testimony of Alfreda Nelson they were justified in concluding that the property was stolen and disposed of in the manner she testified. We cannot say the jury were not warranted in accepting her testimony as true, and a reversal of the judgment would be unauthorized on the ground that the proof did not show the property was stolen and disposed of as testified to by the witness. (*People* v. *Grosenheider*, 266 Ill. 324; *People* v. *Conners*, 246 id. 9; *People* v. *Nall*, 242 id. 284; *People* v. *Lutzow*, 240 id. 612.) Under the evidence the jury might lawfully find Thompson guilty of receiving stolen property. The fact that he was in the house of the Cliftons at the time the jewelry was stolen and that he had advised the theft did not require a verdict against him of larceny and nothing else. Where the proof shows a defendant who is indicted for receiving stolen property was also an accessory before the fact but was not present at the time of the actual conversion of the goods, he may be convicted for receiving stolen property. (*People* v. *Feinberg*, 237 Ill. 348; *Delahoyde* v. *People*, 212 id. 554.) At the time the silverware was stolen Thompson was not near the premises of the Cliftons, but he did receive the jewelry from the person who stole it, in the premises. The jury evidently found him guilty of receiving all the property that was stolen, as the value of it was found by the jury to be $800. Under the authorities cited and cases referred to in those decisions the verdict was not erroneous under the proof.

Because Alfreda Nelson testified that when she met Thompson with the suit-case of silverware she delivered it to him and he delivered it to Barrett when they met Barrett, it is insisted the verdict against Barrett cannot be sustained, as he received the property from one who procured it from the party who stole it. This we think untenable. Assuming Alfreda Nelson's testimony to be true, it warrants the conclusion that she was met by Thompson first and then by Barrett at another place for the purpose of

receiving the stolen property, and the fact that it was passed by her to Thompson and by him to Barrett does not make Barrett's participation in the offense different from Thompson's. They both received the property from the one who stole it, knowing it to be stolen property.

It seems apparent the reason the jury returned separate verdicts was that there was no proof connecting Barrett with the jewelry, and the value of the property received by him was fixed at $400. It cannot be said there was no proof upon which the value of the property received by Barrett could be fixed at $400. Mrs. Clifton testified the jewelry and silverware were worth from $800 to $1000. While no separate value was placed by her upon the silverware, she described it, and she further described particular articles of jewelry and fixed the value of them, which totaled $335, but she said there was other jewelry consisting of rings and stick pins, some of which were of no great value. Under the testimony it cannot be said there was no warrant for the finding that the property received by Thompson was of a value of $800 and that which Barrett received was of a value of $400.

No such error was committed by the court in restricting the cross-examination of witnesses for the prosecution as would justify a reversal of the judgment.

It is claimed the court erred in giving instruction No. 6 for the prosecution. That instruction told the jury they were the judges of the credibility of the witnesses, and in reciting the things to be considered in determining the weight to be given the testimony, told the jury they might consider, among other things, "any circumstances" that tended to shed light upon the credibility of the witnesses. The instruction is subject to the technical objection that it did not limit "any circumstances" to be considered to those shown by the evidence. It is inconceivable that this omission, in view of the other instructions given for the prosecution and the defense, could have misled the jury to under-

stand they could consider circumstances not appearing in evidence, and there is no intimation that there were any circumstances which were or could have been considered by the jury outside of those shown by the testimony.

By the eleventh instruction given for the prosecution the court told the jury that a defendant might be convicted upon the uncorroborated testimony of an accomplice, and that if they believed the testimony of the witness Alfreda Nelson to be true they might act upon it as true; that the testimony of an accomplice, like all other evidence, was for the jury to pass upon. The objection made to this instruction is that it singled out Alfreda Nelson. While the general rule is that it is erroneous to single out the testimony of a particular witness in an instruction, that rule could not apply in this case. The prosecution had a right to have the jury instructed as to the law applicable to the testimony of an accomplice, and as Alfreda Nelson was the only accomplice who testified for the prosecution, naming her in the instruction did not make it erroneous.

It is claimed on behalf of plaintiff in error Thompson that the court erred in refusing to give four instructions asked by him, and on behalf of plaintiff in error Barrett that the court erred in refusing to give one instruction asked on his behalf. The questions raised by the assignment of these errors are not of a character to require their treatment in detail. Twenty-six instructions were given on behalf of plaintiffs in error, and those refused by the court contained no principle or rule of law vital or material to the defense which was not contained in instructions given.

We find nothing in the record that would justify a court of review in reversing the judgment, and it is therefore affirmed.

*Judgment affirmed.*