(Docket No. 11836.—Reversed in part and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS GOODMAN *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1918.*

1. CRIMINAL LAW—*when offenses of burglary, larceny and receiving stolen goods may be joined.* The offenses of burglary, larceny and receiving stolen goods may be joined in one indictment against one or several defendants, and the indictment may not be quashed or attacked by demurrer merely because the crimes were committed at different times nor because it may appear during the trial or after verdict that one or more defendants are guilty only of receiving stolen goods, but where there is no expected evidence to connect a particular defendant with the burglary or larceny it is not proper to try him with the alleged thieves.

2. SAME—*what modification of an instruction as to good reputation is erroneous.* An instruction stating that "evidence of good reputation, alone, may be sufficient to raise a reasonable doubt as to the guilt of the said defendants" is not proper without the qualification that such reputation must be so good as to raise a doubt in the minds of the jury as to the truthfulness of the positive evidence, but a modification by the court that such doubt may be raised only when, in the opinion of the jury, "the evidence in the case as to said defendants is otherwise of a doubtful character," is erroneous.

3. SAME—*when court will not review assignments of error as to instructions.* Where the abstract fails to recite all of the instructions given, the Supreme Court will not review assignments of error upon the rulings of the court upon instructions.

4. SAME—*record of conviction must be introduced to discredit witness in criminal case.* It is proper in a civil case to show by the witness that he has been convicted of an infamous crime for the purpose of affecting his credibility, but in criminal cases such proof must be made by introducing the record of conviction.

5. SAME—*when new and separate trial should be granted after conviction of several defendants.* Where several defendants are tried together and convicted and the guilt of some is clear while that of one or more of them is on the evidence open to reasonable doubt a new trial may be granted to such defendant or defendants, and should be granted where it appears that a separate trial of such defendants will best serve the ends of justice.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

CLARENCE S. DARROW, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and NOAH C. BAINUM, (GEORGE C. BLISS, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error, Louis Goodman and Max Goodman, brothers, were indicted jointly with Ike Kaminsky, Meyer Mendelson, Morris Mendelson, Morris Kleiman, Harry Green and Nathan Steinberg, at the July term, 1916, of the criminal court of Cook county, on four counts. The first count charged the larceny of one hundred and sixty-six suits of the value of $15 a suit, and seven hundred yards of woolen goods of the value of $2 a yard, the personal goods and property of Max Mantynband. The second count charged the buying and receiving said suits and goods of said values by the defendants knowing the same to have been feloniously stolen, etc. The third and fourth counts charged the defendants with the burglary of the store of Max Mantynband with intent said personal goods and chattels of Mantynband in said store situated feloniously and burglariously to steal, take and carry away, contrary to the statute, etc. Morris Mendelson was granted a separate trial on his motion, and afterwards the indictment was as to him stricken from the docket with leave to re-instate, on motion of the State. Meyer Mendelson pleaded guilty to the charge of burglary. Pleas of not guilty were entered and motions for separate trials were made by each of the defendants Kaminsky, Kleiman, Green and plaintiffs in error, which were overruled by the court. On the trial at the June term, 1917, of said court Kaminsky consented to testify for the State, and the indictment was dismissed as to him on motion by the State. After the State had presented its evidence counsel for plaintiffs in error moved the court to require the State to elect on which count it would

proceed against them. The motion was denied as to Louis Goodman and granted as to Max Goodman, and the State elected to proceed against the latter on the count for receiving stolen goods. The jury returned a verdict of guilty against the four defendants tried, finding Kleiman and Green guilty of burglary and larceny and plaintiffs in error guilty of receiving stolen goods knowing the same to be stolen. Motions for new trial and in arrest of judgment were filed and overruled, and all four of the defendants on September 15, 1917, were sentenced by the court to serve an indeterminate sentence in the penitentiary at Joliet. Louis and Max Goodman have brought a transcript of the record to this court and have sued out writs of error for a review of the judgment.

The evidence discloses that on the night of Sunday, March 12, 1916, the clothing store of Max Mantynband, at 657 West Twelfth street, Chicago, between DesPlaines and Union streets, was burglarized and one hundred and sixty-six suits of men's clothing and fourteen bolts of goods, of the total value of from $5000 to $6000, were stolen and carried away. The next morning Mantynband discovered the burglary and larceny and reported the same to the police. On the morning of March 14 or 15 Morris Kleiman and another man called on George Sproul, a teaming contractor in Chicago, and asked him for a wagon to haul some goods from an old barn at or near the corner of Polk and Sholto streets. Sproul sent a wagon in charge of Harry Nord after the goods. Half an hour later Nord returned with the goods boxed up in three large wooden crates or boxes, and Sproul made out a bill of lading for them from B. David to L. Goodman, Essex, Illinois, and delivered it to Meyer Mendelson. The boxes of goods were marked in ink, "From B. David to L. Goodman, Essex, Illinois." Sproul became suspicious that the goods were stolen and communicated with the detectives of the Cartage Exchange. Later, with detective Flynn and two police officers,

he went to the freight yards of the Illinois Central Railroad Company, where Nord had been directed by the parties in charge of the goods at the barn to deliver them, and found the boxes in a freight car and opened them. Mantynband was sent for and identified all of the goods as his goods that had been stolen from his store. Several officers, with detective Flynn and Sproul, then went to the old barn where the thieves had stored the goods, and found burglars' tools, an iron saw, a steel chisel, a hammer, a jimmy, a crow-bar and a piece of rope in a manger or stall and covered with hay. Mantynband replevined and recovered all of his goods except a few suits and some of the cloth stolen, of the total value of about $200.

The foregoing facts are not controverted, and the evidence clearly established beyond any doubt that the parties who burglarized the store and stole the goods were the parties named in the indictment, Kaminsky, Kleiman, Green, Steinberg and the two Mendelsons. It is just as clearly shown by the evidence that plaintiff in error Max Goodman took no part in the burglary and larceny and knew nothing about the store being burglarized and the goods being stolen until about two or three or more days after such burglary and theft. One of the contentions of plaintiffs in error is that the evidence does not prove beyond all reasonable doubt that either of them was guilty of the burglary or the felonious stealing or carrying away of said goods, and that there was no evidence whatever of such guilt on the part of Max Goodman, and that it is improper and erroneous, under such circumstances, to join burglary and receiving stolen goods knowing them to be stolen, in the same indictment, where there is no charge or evidence of conspiracy or common design leading both to the burglary and to the receiving of the stolen goods.

It has been frequently held by this court that burglary and receiving stolen goods may be joined in one indictment against one or several defendants, and that the indictment

may not be quashed or successfully attacked by a demurrer merely because of the fact that they are different and distinct crimes, committed at different times or on different days. (*Bennett* v. *People,* 96 Ill. 602; *People* v. *Moeller,* 260 id. 375.) A defendant may be an accessory before the fact to a burglary and larceny by having advised and encouraged the burglary and larceny, and he may also be guilty of buying and receiving the same goods so stolen knowing the same to have been stolen. In such a case he may be properly indicted for all three of said offenses and convicted of any one of them. (*People* v. *Thompson,* 274 Ill. 214.) Louis Goodman, according to the evidence of Kaminsky, selected the store of Mantynband as the store the six burglars should burglarize and located for them in that store the goods to be stolen, because he had a grudge against Mantynband and because the goods were good and salable goods that he could sell to advantage. The facts, if communicated to the State in advance of the indictment, warranted the State's attorney in having him indicted and in insisting that he be tried with the six burglars. Whether or not he was prejudiced by having been tried with the burglars is another question, depending on the facts proven, and the same is true as to Max Goodman. But so far as the rule is concerned as to the indictment, it is general and to the effect that all the guilty parties may be indicted in one or in several counts, all charging burglary, larceny and receiving stolen goods knowing them to be stolen, and it is not subject to a successful attack by a demurrer, motion to quash or in arrest of judgment, merely because it may appear during the trial or after verdict that a defendant or defendants were only guilty of receiving stolen goods knowing them to be stolen.

It is further insisted that the court committed reversible error in refusing to grant Louis Goodman a separate trial and in refusing to compel the State to elect upon which count of the indictment it would proceed against him at the

close of the State's evidence. We do not think the record sustains this contention. As has already been indicated in this opinion, the evidence of Kaminsky is, in substance, that on the night of and just prior to the burglary he saw Morris Kleiman, one of the burglars, talking to Louis Goodman on the corner of Miller and Fourteenth streets, in Chicago, and heard Louis say to Kleiman, in substance, that in the center of Mantynband's store there were good serges and on "the other side" the better suits and that he wanted Kleiman to get those suits, saying: "Mantynband switched a ring on me a year ago; I want to get even with him, and those are the goods I want you to take; I can use those goods." The evidence further shows that Louis Goodman was a jewelry merchant in Chicago, but no further explanation is given as to what he meant by saying that Mantynband switched a ring on him. Kleiman testified positively that Louis Goodman did not make said statement to him on the night of the burglary or anything like it and that he had no conversation whatever with him on that night and that Louis knew nothing of the burglary until after it happened. He admitted, however, that he incriminated Louis Goodman in the charge of burglary on a preliminary hearing before the final trial but testified that he was told to do so by another party, and that they would not let him tell the truth at the preliminary nor did he do so. Both are confessed and thoroughly proven professional thieves and burglars. Their stories are each conflicting when considered together and both are inconsistent when considered alone. Kaminsky's case was dismissed by the State, but he testified that he was not promised immunity and was merely told to, and did, tell the truth. Kaminsky was also contradicted in many important details in his testimony as to Louis' conduct and words in buying and receiving the stolen goods on the Tuesday evening after the burglary. However, it was clearly proven by the testimony of both Kaminsky and Kleiman, and of Green, that Louis

Goodman purchased the goods of these burglars for $800,—
$500 to be paid when the bill of lading was delivered to him
and $300 to be paid when the goods were received in Es-
sex; that he examined the goods at the old barn late in
the evening, about dark, by flash-light, in the presence of
the burglars and his brother, Max, and after his brother had
said whoever bought those goods would get into trouble,
and after Max had, according to his testimony, refused to
buy them or to have anything to do with them, and that
the bill of lading was delivered to Louis by the burglars on
Tuesday morning, when he paid them the first $500. Louis
Goodman did not testify, and the evidence as to his receiv-
ing the goods knowing them to be stolen went to the jury
undenied by him or by any other witness who had any op-
portunity to know about those facts. He is so clearly and
so conclusively proven guilty of receiving the goods know-
ing them to have been stolen that the claim that he was
prejudiced and entitled to a new and separate trial has little
or no persuasive force or merit and must be denied.

There are two further reasons assigned for the conten-
tion that the verdict should be reversed as to Louis Good-
man: (1) That the court erred in modifying an instruc-
tion asked on behalf of plaintiffs in error; and (2) that the
court erred in the exclusion of evidence offered by them.

The material part of the instruction complained of is:
"That the defendants, Louis Goodman and Max Goodman,
have in this case given evidence regarding their good repu-
tation prior to the commission of the offense charged in
this indictment, and the court further instructs you that said
evidence is competent legal evidence, and that the evidence
of good reputation, alone, may be sufficient to raise a rea-
sonable doubt as to the guilt of the said defendants, *if in
your opinion the evidence in the case as to said defendants
is otherwise of a doubtful character.*" The words in italics
were added by the court as a modification of the instruction
offered, and the part of the instruction other than the itali-

cized portion are the words in which the instruction was offered. It would not have been error for the court to have refused to give the instruction as offered. "Good character may create a doubt against positive evidence, but this doubt against positive evidence is created only when, in the judgment of the jury, the character is so good as to raise a doubt as to the truthfulness or correctness of the positive evidence. In such a case the prisoner must be given the benefit of the doubt." (*People* v. *Hughson,* 154 N. Y. 153.) The jury should not have been told outright that such evidence, alone, may be sufficient to raise a reasonable doubt, without the proper qualification. It savors too much of an intimation by the court that the evidence of good character in the case was sufficient, of itself, to raise a reasonable doubt, which would be an invasion of the province of the jury. The modification added by the court was, in fact, erroneous and may or may not be reversible error, depending upon the character of the evidence and the other instructions given by the court. The instruction above given is the only one of a series of instructions offered both by the State and plaintiffs in error that is shown in the abstract. Where the abstract fails to recite all of the instructions given, this court will not review assignments of error upon the rulings of the court upon instructions. *Thompson* v. *People,* 192 Ill. 79.

The court did not err in refusing to permit the plaintiffs in error to inquire of the witness Kaminsky, on cross-examination, whether he had ever been convicted of burglary. It is proper in a civil case to show by the witness that he has been convicted of an infamous crime for the purpose of affecting his credibility, but the rule is different in criminal cases. In criminal cases such proof can only be made by the introduction of the record of the conviction. (*Bartholomew* v. *People,* 104 Ill. 601; *McKevitt* v. *People,* 208 id. 460.) The common law rule was changed as to civil suits by the first section of our statute on evidence, but

there never has been any change of the common law rule in criminal cases that such a conviction must be proven by the record. *Gage* v. *Eddy,* 167 Ill. 102.

We do not see how plaintiffs in error could expect any other or different verdict as to Louis Goodman when the evidence in this record is fully considered, although said erroneous instruction was given. We are not disposed to attach any importance to the giving of said erroneous instruction as to Louis Goodman in the absence of the other instructions from the abstract, and which might have been of such a character as to show that when all of the instructions were considered the erroneous instruction did him no harm.

As to plaintiff in error Max Goodman, the showing against him in this record is quite different from that made against Louis Goodman. He established his good character by a number of witnesses,—bankers, farmers and various other business men. The only evidence in the record that tends to incriminate Max Goodman is the testimony of the burglar, Kaminsky. The substance of his testimony against Max Goodman is, that on the second day after the burglary he saw Max in the old barn where the stolen goods were stored, and that Max looked at a suit of the stolen clothes by the light of a flash-light in the hands of one of the burglars and said, "This is good goods and we'll take 'em;" that Max went away with his brother, Louis, without further examination or further words; that in the evening the burglars met at Louis Goodman's house for further conference about the trade, Max and Louis both being present; that Max there said, "I will agree to this business, but if there are arrests or anything I don't want you to interfere with me or mix me up in any way, as I do business right along;" that Max promised to buy Steinberg, Green and Kleiman an auto truck so they would not be bothered about a wagon to haul the goods; that he told them he was going to give them $800 for the whole job lot; that he could

only give $500 to his brother at that time; that he took $500 out of his pocket and gave it to his brother over a table, saying that as soon as they brought him the bill of lading Louis would pay them the $500 and that he would see that his brother got the other $300 from him later. Two daughters of Louis Goodman, aged seventeen and nineteen years, respectively, testified in the case that they heard the conversation that occurred at Louis Goodman's, and that Max Goodman made no such statements and that no money was paid or shown by Max; that no talk of buying and paying for the goods occurred there that night, and that no agreement of purchase was made either by Max or Louis Goodman. Their testimony in that regard is corroborated by two of the other defendants, Kleiman and Green, who testified positively that Louis Goodman was the party who bought the goods, and that they were bought down-town at a saloon and that Max Goodman was not known in the purchase. Max Goodman testified that he was called to Chicago on business by his brother, Louis, on Tuesday after the burglary, and that Louis told him, in substance, that he wanted him to meet some jobbers who had some goods to sell at a bargain; that they met the supposed jobbers at the saloon aforesaid and that they all went with Max and Louis Goodman to the old barn, and that as soon as he saw the surroundings and saw the goods he refused absolutely to have anything to do with them and said to his brother that whoever bought the goods would get into trouble. He denied positively the entire conversation attributed to him at Louis' home on Tuesday night. He at all times denied ever purchasing the goods or having anything to do with the purchase of them. The evidence shows that he is a dealer in dry goods and clothing at Gardner, Illinois, which is about seven miles from Essex, and that he owns another such store at Wilmington, Illinois. For the purpose, apparently, of trapping Max Goodman, Mantynband went to Essex after he had discovered his stolen goods and called

up Max at Gardner on the telephone and told him that he was the station agent at Essex and that there were some goods there for him at the Big Four station. Max answered him, in substance, that he had no goods at Essex and was not looking for any, and that he did not ship goods over the Big Four railroad or have them shipped to him. Besides Kaminsky's testimony, which was overwhelmed by the other witnesses, there are just two circumstances relied on to connect Max Goodman with the ownership of the goods, or the purchasing thereof, that were shipped to Essex in the name of L. Goodman: (1) The fact that he lived and did business at Gardner, only seven miles away from Essex; and (2) that while in Chicago on Tuesday after the burglary he loaned his brother, Louis, $200.

The evidence in this case is so unsatisfactory against Max Goodman that we think the court should have granted his request for a separate trial or should at least have granted him a new trial. It is absolutely certain that he was in no way connected with the burglary or larceny and knew nothing of it until after he was called to Chicago on Tuesday after the burglary. While it is permissible to try him on an indictment charging burglary, larceny and receiving stolen goods if tried alone, yet it is not proper practice for the State to try him along with the thieves and burglars when there is no evidence or claim of evidence to connect him with the burglary or larceny. By such action the State's attorney always takes the risk of a verdict against such a party being set aside whenever the evidence against him is unsatisfactory or where the evidence in the record discloses grounds for the claim that the party was prejudiced by being tried with the burglars and thieves. Where several defendants are tried together and convicted and the guilt of some is clear while that of one or more of them is on the evidence open to reasonable doubt, a new trial may be granted to such defendant or defendants, and should be granted where it appears that a separate trial of such

defendants will best serve the ends of justice. *Clark* v. *People,* 111 Ill. 404; *Watts* v. *People,* 204 id. 233.

The judgment of the criminal court will be reversed and the cause remanded as to Max Goodman and affirmed as to plaintiff in error Louis Goodman.

*Reversed in part and remanded.*