(No. 21559.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVE BLUMENFELD, Plaintiff in Error.

*Opinion filed December 23, 1932.*

JAMES J. McDERMOTT, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and J. J. Neiger, (Edward E. Wilson, and Grenville Beardsley, of counsel,) for the People.

Mr. Chief Justice Heard delivered the opinion of the court:

Plaintiff in error, Dave Blumenfeld, was jointly indicted in the criminal court of Cook county with Wilma Harjes, Ernest Levy, Max Levy and Sadie Weingarten. The indictment contained two counts, the first of which charged the defendants with the larceny of certain articles of jewelry, the personal property of Helen Stern, of a value exceeding $90,000, on August 31, 1931. The second count charged them with the crime of receiving stolen property. The case against Sadie Weingarten was *nol prossed* by the State's attorney. Wilma Harjes was granted a separate trial and entered a plea of guilty. Ernest and Max Levy were tried jointly with plaintiff in error. At the close of the evidence the State's attorney *nol prossed* the second count of the indictment as to Ernest and Max Levy and the first or larceny count as to plaintiff in error. At the close of the trial the jury returned a verdict finding Ernest and Max Levy guilty of larceny and plaintiff in error guilty of receiving stolen property knowing the same to be stolen, etc., and finding the value of the property received by plaintiff in error to be $85,000. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to the penitentiary on the verdict. He brings the record here on writ of error.

Plaintiff in error presented a written motion to quash the indictment and assigns the overruling of his motion as error. The motion alleged that the indictment was a nullity, in that there was no competent or legal testimony before the grand jury which found the indictment that would warrant or authorize the finding of the indictment

by the grand jury; that the indictment purported to have been found on the testimony of Helen Stern and Leo Carr, whose names were the only ones endorsed on the indictment; that they did not testify to any competent, relevant or material fact and produced no legal documentary evidence of any kind which would prove or tend to prove plaintiff in error had committed the crime alleged in the indictment; that Helen Stern testified before the grand jury that on August 31, 1931, there was in her employ a maid named Wilma Harjes, who had personal knowledge as to where the witness' jewelry was kept for safekeeping; that during the time witness was away from her home a supposed burglary was alleged to have been committed and the personal articles of jewelry described in the indictment were found to be missing; that she was not personally acquainted with plaintiff in error nor was she present at any time when Wilma Harjes made any statement or confession in the presence of plaintiff in error and that she had no personal knowledge that plaintiff in error took part in the crime charged in this case; that Leo Carr, a police officer of the city of Chicago, testified that on November 3, 1931, he arrested plaintiff in error in Gary, Indiana; that plaintiff in error came to the premises of Wilma Harjes in the company of Sadie Weingarten; that before he arrested plaintiff in error he had talked with Wilma Harjes out of the presence of plaintiff in error; that she informed him that plaintiff in error received from her the articles described in the indictment; that at the time he arrested plaintiff in error he searched his person and found none of the articles described in the indictment; that he subsequently took plaintiff in error to the detective bureau in Chicago, where he took a statement from Wilma Harjes in which she stated that she handed the jewelry described in the indictment to plaintiff in error, who was not present at the time the statement was made; that at no time was this statement read to him; that immediately after the arrest

Carr asked him as to his connection with the crime; that he denied that he was implicated in the crime or that he had any knowledge that the same had been committed; that Carr had no personal knowledge or information that plaintiff in error was in any manner connected with the crime other than the information he received as a result of the statements made to him by Wilma Harjes. The motion to quash further alleged that none of the grand jurors had any personal information or knowledge concerning the matters or things contained in the indictment, and that neither Wilma Harjes nor any other defendant named in the indictment testified before the grand jury. A written offer of proof was attached to the motion to quash, wherein plaintiff in error requested that the court call as witnesses on the hearing of the motion to quash, the witnesses Stern and Carr for the purpose of showing to the court that the testimony offered by them before the grand jury was incompetent, irrelevant and immaterial, and that the testimony of such witnesses would not prove or tend to prove that plaintiff in error was guilty of the crime charged in the indictment and that their testimony would not prove or tend to prove the *corpus delicti* of the crimes charged in the indictment. He made no attempt to subpoena the witnesses and produced no witnesses on the hearing of the motion to quash in support thereof but went to a hearing on the motion to quash without any evidence, either oral or written, to substantiate the motion and without any request for time in which to produce such witnesses, whose attendance he could have compelled by the process of subpoena. The court did not err in overruling the motion to quash.

Prior to the commencement of the trial plaintiff in error made a motion for a separate trial, and in support thereof filed his affidavit and that of his attorney, in which it was alleged that Wilma Harjes had made certain false statements or confessions to police officers not in plaintiff in error's presence, in which she implicated him with hav-

ing taken part in the crime; that such false statements and confessions would be admissible in evidence as against her but incompetent and prejudicial as to him; that she had no funds to employ counsel and that the court had appointed the public defender to defend her and Max Levy; that she would be a witness in the trial of the cause, and that because of the representation of the co-defendants, Harjes and Levy, by the public defender of Cook county, plaintiff in error's right to a fair and impartial trial would be prejudiced. The court overruled this motion, which action is assigned as error. It is highly important that justice should speedily be meted out and that the criminal should be punished with celerity and dispatch, (*People* v. *Blumenfeld,* 330 Ill. 474,) yet it is more important that one accused of crime should have a fair and impartial trial. An application for separate trial is addressed to the sound discretion of the court and is not a matter of right, and unless that discretion is abused the discretion of the trial court is not subject to review, (*People* v. *Lawson,* 331 Ill. 380,) but where a motion for a separate trial is made on the ground of confessions of other defendants implicating the defendant making the motion, a severance should be ordered unless the State's attorney agrees that the confessions or admissions will not be offered in evidence on the trial or unless there be eliminated from the confessions any reference to the complaining defendant. (*People* v. *Fisher,* 340 Ill. 216.) The court should have granted plaintiff in error a trial separate from that of Wilma Harjes, and it was error not to grant his motion for such trial. This error, however, was harmless, for the reason that she pleaded guilty and was not placed upon trial with plaintiff in error and he was in nowise prejudiced by this error.

According to the testimony of Wilma Harjes, in response to a telephone call from Ernest Levy on the afternoon of August 31, 1931, she agreed to go to the servants' entrance to the Stern premises on Sheridan road at four

o'clock P. M. to deliver the jewels to some man who would be there at that hour, and she delivered the jewels to a man at that place and at that time and that the man was the plaintiff in error. It is contended by plaintiff in error that if this was true it took the joint acts of the two to constitute the crime of larceny, and that the same person cannot be both the thief and the receiver of stolen property. (*People* v. *Dalke,* 336 Ill. 446; *People* v. *Ensor,* 310 id. 483.) The rules laid down in those cases do not require a reversal of this case. While one person cannot receive stolen property from himself, (*People* v. *Barnhill,* 333 Ill. 150,) the evidence in this case does not show that plaintiff in error was in the house when the jewels were stolen or that he had any connection with the crime prior to his reception of the jewels from Wilma Harjes, who had already stolen them. Where the proof shows a defendant who is indicted for receiving stolen property was also an accessory before the fact but was not present at the time of the actual conversion of the goods he may be convicted of receiving stolen property. *People* v. *Thompson,* 274 Ill. 214; *People* v. *Feinberg,* 237 id. 348.

It is contended by plaintiff in error that the court erred in giving to the jury, at the request of the People, an instruction as to the weight to be given to the testimony of an accomplice. The instruction here given was not couched in the same language as that given in *People* v. *Rongetti,* 338 Ill. 56, or *People* v. *Lawson,* 345 id. 428, and the series of instructions was entirely different from the instructions given in those cases. In the latter of these cases it was said: "The jury, in determining the credibility of an accomplice, are governed by the rule that his testimony is subject to grave suspicion and should be acted upon with great caution. The jury should carefully consider such testimony in the light of all the other evidence in the case and the influence under which the testimony was given, in order to determine whether the purpose of the witness was

to shield himself from punishment, to obtain some personal benefit or advantage or to gratify his malice. If, after all the facts and circumstances in evidence are considered, the uncorroborated testimony of an accomplice is of such a character as to prove guilt beyond a reasonable doubt it will authorize a verdict of guilty." In the instant case the court instructed the jury that the instructions were given and should be considered together as one entire series and each instruction should be considered in connection with all instructions bearing upon the same subject; that in giving the instructions it is not the intention of the court in the least degree to give the jury any opinion as to whether or not the defendant was guilty of the offense charged in the indictment or to express any opinion as to the weight or sufficiency of the testimony or as to the credibility of any witnesses; that the jury were not required to believe any statement to be a fact simply because a witness has sworn it to be a fact, if they believe from the evidence that such witness has willfully or mistakenly sworn falsely to such alleged fact, even if such witness be not directly contradicted with respect to such matter by some other testimony; that while the testimony of an accomplice was competent evidence such testimony was liable to grave suspicion and should be acted upon with great caution; that the jury should subject testimony of an accomplice to a careful examination in the light of all the evidence in the case and consider the influence, if any, under which such testimony was given and whether the purpose of the witness Wilma Harjes was to shield herself from punishment or obtain some benefit to herself or gratify her malice; that the witness Wilma Harjes has admitted that she stands convicted of the crime of larceny; that the conviction of a witness of a felony is evidence tending to impeach the credibility of such witness' testimony, and in considering the case and determining the weight which they would attach to the testimony of Wilma Harjes the jury have a right to take into

consideration the fact that she stands convicted of the crime of larceny; that in weighing and considering the credibility of witnesses the jury should consider whether any of such witnesses have become interested in or hope to receive any reward or benefit from the prosecution of the case or in any other way become interested or have their feelings or passions enlisted for or against the defendant, and if the jury should find that any such witnesses have sustained or do sustain such relations in the case as would naturally tend to interest them, then it was the duty of the jury to consider whether such feeling or interest of such witness has had any effect upon such of his testimony as is material to the issues in this case. When the instructions of this case are considered it will be found that those bearing upon the testimony of Wilma Harjes were more favorable to the defendant than the rule laid down in *People* v. *Lawson* last quoted.

Plaintiff in error contends, lastly, that there is a reasonable doubt of his guilt. Wilma Harjes testified that in pursuance of an arrangement made between herself and Max and Ernest Levy she stole the jewels from the Stern home and gave them, in accordance with her previous arrangement, to plaintiff in error; that thereafter at different times she talked with all three of the defendants about the commission of the crime and the division of the proceeds thereof; that plaintiff in error and Max Levy went by airplane to New York and disposed of the greater portion of the jewels; that after their return they went to Gary, Indiana, where she and Ernest Levy were living in an apartment as husband and wife under the name of Loeb; that the proceeds were divided into shares between them, and that she received as her share $2200 from plaintiff in error. Max Levy received about $1800, having already drawn $750. Ernest Levy received about $1200, having already drawn $900, and plaintiff in error got $1600, having drawn $500. Plaintiff in error and Max Levy were arrested in

the apartment which had been occupied by Wilma Harjes and Ernest Levy for about three weeks prior thereto, by two police officers who were concealed in a closet in the apartment. These officers testified to a part of the conversation between the parties prior to the arrest, but owing to the distance from the speakers, that a part of the conversation was in German and the low tone in which the men talked they were not able to get much of it. One of the detectives testified that in the conversation Wilma said: "The plan they had used in robbing the jewelry from the Stern home was not a good plan; that they should have gone through with the first plan and stuck up the place instead of having her steal the jewels; that she was not going to be able to leave the country and return to Germany." One man replied, "You keep chasing around lawyers and you will get yourself in the can." Max and Ernest Levy and plaintiff in error each testified denying any participation in the crime and denying each of the conversations alleged to have taken place between them and Wilma or between themselves in her presence. Plaintiff in error gave as the reason for his being present at the apartment in Indiana at the time of the arrest that he had gone there with Max Levy and Sadie Weingarten for the purpose of inducing Ernest Levy to leave Wilma Harjes and return to Chicago to his wife and children. Plaintiff in error testified that at the time of the commission of the crime he was at the races at Lincoln Fields in the company of Isadore Wolfe. Wolfe also testified to their presence at Lincoln Fields at that time.

There was a direct conflict in the evidence. If the jury believed the evidence against plaintiff in error adduced by the State it was their duty to find him guilty; if they had a reasonable doubt from the evidence as to his guilt it was their duty to find him not guilty. It was a duty which devolved solely upon the jury, who saw and heard the witnesses and observed their manner of testifying, to deter-

mine, under the rules of law given them by the court, the credibility of the witnesses. No complaint is made of any misconduct of the counsel for the State, of any improper rulings on evidence by the court, or of any improper statements made by either court or counsel which would have a tendency to prejudice the jury against the defendant, and no complaint is made of any circumstance occurring upon the trial which would tend to prevent him from having a fair and impartial trial. When all the evidence in the case is considered together we cannot say that it was insufficient to satisfy the jury, beyond a reasonable doubt, of the defendant's guilt.

Finding no reversible error in the record the judgment of the criminal court is affirmed. *Judgment affirmed.*