The defendant was convicted of receiving and keeping liquor on hand for sale, and from the judgment upon such conviction appealed to this Court. There were four counts in the bill of indictment, the first charging the transporting of liquor; second, the delivering of liquor in a quantity greater than one quart; third, the receipt of more than one quart of liquor during fifteen consecutive days; and fourth, keeping liquor in his possession for the purpose of sale.
"Before the impaneling of the jury, counsel for the defendant moved to dismiss the action, for that all laws upon the statute books of the State of North Carolina referring to the manufacture, sale, and transportation of intoxicating liquors were repealed when the Eighteenth Amendment to the Constitution of the United States went into effect, said date being 16 January, 1920, and this offense with which this defendant is charged having been committed since said date, and this court therefore being without jurisdiction." Motion overruled, and defendant excepted.
The State offered the following evidence:
W. H. Harris, a member of the police force of Asheville, testified: "That he had known the defendant for about one year; that on the night of ______ August, 1920, he arrested the defendant at a boarding-house in the city of Asheville; that when he entered the room occupied by the defendant the defendant was on his bed asleep; that he found there about four pints of whiskey, and some empty bottles, and a funnel; that there was also in said room an empty suitcase on the floor close to the bed occupied by the defendant; that there were some empty fruit jars in the room, but that there had not been any whiskey in the jars; that they *Page 746 
were all empty quart jars; that the whiskey was in a bureau drawer, also the empty bottles; that he knew of no sale of whiskey being made by the defendant, nor had he seen the defendant offer any whiskey for sale; that the defendant was partially intoxicated at the time of the arrest; that the total amount of whiskey found in the room was about three and one-half pints, and two empty pint bottles; that the defendant was in his sleeping-room at the time of the arrest; that he smelled of the fruit jars, and that in his opinion there had been no whiskey in them."
R. H. Luther testified: "I went to his room with Mr. Harris, when the arrest was made. We found the whiskey contained in the bottles offered in evidence, and saw six or eight empty bottles and six or eight fruit jars in the room; also a small whiskey glass and a funnel; the fruit jars were at the foot of the bed in which the defendant was asleep. The whiskey was in one of the drawers, which was about half-way open. The defendant was drunk or intoxicated when we found him on the bed. The defendant lives near Leicester, about ten miles from this rooming-house."
At the conclusion of the evidence the defendant moved for judgment of nonsuit upon the ground that there was no evidence to support either count in the indictment, which motion was overruled, and the defendant excepted.
The jury returned a verdict of guilty on the third and fourth counts, and from the judgment pronounced thereon the defendant appealed.
The evidence is sufficient to sustain the verdict. The defendant lived ten miles from Asheville, and he was occupying a room in a boarding-house in Asheville, fitted up for receiving liquor and keeping it for sale. At the time of his arrest he had more than a quart of whiskey in his possession in several small bottles, a whiskey glass, and a funnel, and empty bottles and fruit jars were found in his room. In the absence of explanation the jury might reasonably and legitimately infer from these circumstances that the defendant was receiving liquor illegally and for an illegal purpose.
The effect of the prohibition amendment and of the Volstead Act on State legislation is fully considered in the instructive and learned opinion byRugg, Chief Justice, of Massachusetts, in Commonwealth v. Nickerson, recently decided, from which we quote at length, preferring to do so to presenting the thoughts and reasoning of the Court in our own language. *Page 747 
The defendant was convicted on the charge of selling liquor illegally in violation of a statute of the State, which the defendant insisted was superseded by the Volstead Act.
The Court says; "The Eighteenth Amendment was proclaimed as having been ratified, and thus became a part of the fundamental law of the land, on 29 January, 1919, 40 U.S. Sts. at Large, 1941. Its first two sections, being the ones here pertinent, are in these words:
"`SECTION 1. After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes are hereby prohibited.
"`SEC. 2. The Congress and the several States shall have concurrent power to embrace this article by appropriate legislation.'
"Congress, pursuant to the power conferred upon it by the second section of the Eighteenth Amendment "to enforce this article by appropriate legislation,' has enacted the National Prohibition Law, being act of 26 October, 1919, ch. 85, acts Sixty-sixth Congress, 41 U.S. Sts. at Large, 305, known as the Volstead Act."
"By Title II, s. 1, of the Volstead Act it is provided that, `The word "liquor" or the phrase "intoxicating liquor" shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes,' with exceptions not here material. By s. 3 of the same title it is provided that `No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end and that the use of intoxicating liquor as a beverage may be prevented.' By s. 29 the penalty for a sale of liquor in violation of Title II is for a first offense a fine of not more than one thousand dollars or imprisonment not exceeding six months, and for a second or subsequent offense a fine of not less than two hundred dollars, nor more than two thousand dollars, and imprisonment for not less than one month nor more than five years."
Section 35 provides: "All provisions of law inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws." *Page 748 
The Court then quotes from Rhode Island v. Palmer, 252 U.S., as follows: "`6. The first section of the amendment — the one embodying the prohibition — is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act — whether by Congress, by a State Legislature, or by a territorial assembly — which authorizes or sanctions what the section prohibits.
"`7. The second section of the amendment — the one declaring "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation" — does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.
"`8. The words "concurrent power" in that section do not mean joint power, or require that legislation thereunder by Congress to be effective shall be approved or sanctioned by the several States, or any of them, nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.
"`The power confined to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States, or any of them.' By conclusion 10 the Volstead Act is declared applicable indifferently to the disposal for beverage of liquors manufactured before and after the Eighteenth Amendment became effective, and by conclusion 11 the declaration of that act that liquors containing as much as one-half of one per cent of alcohol by volume and fit for use for beverage shall be treated as intoxicating was held to be within the scope of the Eighteenth Amendment."
Concluding that the Supreme Court of the United States has not given an authoritative definition of the words "concurrent power," he discusses this question at length with full and interesting citation of authority.
"This is the only instance to be found in the Constitution, or any of its amendments, where there is a definite declaration that both Congress and the several States have `concurrent power to enforce' any constitutional mandate or power `by appropriate legislation.' Certain powers are reserved to the States. Article 1, section 8. Article X of the amendments. Certain powers are prohibited to the States, and certain other powers can be exercised by the States only by consent of Congress. Article 1, section 10. But in the Eighteenth Amendment alone is there *Page 749 
express establishment of the existence of concurrent power in Congress and the several States to enforce by legislation its provisions.
"The words of the second section of the Eighteenth Amendment are specific to the point that `The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.' This phrase is significantly different from that found in corresponding sections of Amendments XIII, XIV, and XV. In those three instances Congress alone is given power `to enforce' `by appropriate legislation.' Here the several States are joined with the Congress as depositories of concurrent legislative power. It is reasonable to presume that this change in phraseology was adopted understandingly, and imports an intention to effect a change in substance and in scope of the power. Slaughter House cases, 16 Wall., 36, 74. It is hardly likely that in an instrument of such transcendent importance as an amendment to the Constitution, the conjoining of Congress and the separate States as severally possessors of legislative power for enforcement of prohibition should under any circumstances be a barren grant or confer merely an insubstantial shadow upon either. The difference between the phraseology of the Eighteenth Amendment and that of the Thirteenth, Fourteenth, and Fifteenth Amendments in this particular, according to the common and approved usage of language, expressed a purpose to repose in the States a substantial power capable of some measure of effective exercise under all circumstances. The words of the amendment declare a complete possession of power by the States of which they cannot be deprived by Congress. The force and effect of the words of the Eighteenth Amendment, while possibly enlarging the permissible scope of State legislation respecting importation and exportation of intoxicating liquors, leaves open to State legislation the same field theretofore existing for the exercise of the police power concerning intoxicating liquors subject only to the limitations arising from the conferring of like power upon Congress with its accompanying implications, whatever they may be.
"Having regard only to the words of the Eighteenth Amendment, the Congress and the several States are placed upon an equality as to legislative power. It is only when the amendment is placed in its context with other parts of the Constitution that the supremacy of the act of Congress, if in direct conflict with State legislation, becomes manifest."
"The amendment does not require that the exercise of the power by Congress and by the States shall be coterminous, coextensive, and coincident. The power is concurrent, that is, it may be given different manifestations directed to the accomplishment of the same general purpose, provided they are not in immediate and hostile collision one with the other. In instances of such collision the State legislation must yield. *Page 750 
"We are of opinion that the word `concurrent' in this connection means a power continuously existing for efficacious ends to be exerted in support of the main object of the amendment, and making contribution to the same general aim according to the needs of the State, even though Congress also has exerted the power reposed in it by the amendment by enacting enforcing legislation operative throughout the extent of its territory. Legislation by the States need not be identical with that of Congress. It cannot authorize that which is forbidden by Congress. But the States need not denounce every act committed within their boundaries which is included within the inhibition of the Volstead Act, nor provide the same penalties therefor. It is conceivable also that a State may forbid, under penalty, acts not prohibited by the act of Congress. The concurrent power of the States may differ in means adopted, provided it is directed to the enforcement of the amendment. Legislation by the several States approximately designed to enforce the absolute prohibition declared by the Eighteenth Amendment is not void or inoperative simply because Congress in performance of the duty cast upon it by that amendment has defined and prohibited beverages, and has established regulations concerning them. State statutes, rationally adopted to putting into execution the inexorable mandate against the sale of intoxicating liquors for beverage contained in section 1 of the amendment by different definitions, regulations and penalties from those contained in the Volstead Act, and not in conflict with the terms of the Volstead Act, but in harmony therewith are valid. Existing laws of that character are not suspended or superseded by the act of Congress. The fact that Congress has enacted legislation covering in general the field of national prohibition does not exclude the operation of appropriate State legislation directed to the enforcement by different means of prohibition within the territory of the State.
"The power thus reserved to the states must be put forth in aid of the enforcement and not for the obstruction of the dominant purpose of the amendment."
The Court then discusses the power of the State under the amendment to enact legislation dealing with intoxicating liquors assuming that the view expressed as to the meaning of "concurrent power" may not be correct, and says: "The general principle as to the right of the States to exercise the power of effective legislation concerning subjects over which Congress also has power was stated in these words (summarizing language of Mr. JusticeStory in Houston v. Moore, 5 Wheat., 1, at 49), in Gilman v. Philadelphia, 3 Wall., 713, at 730: `The States may exercise concurrent independent power in all cases but three: 1. Where the power is lodged exclusively in the Federal Constitution. 2. Where it is given to the United States and prohibited to the States. 3. Where *Page 751 
from the nature and subjects of the power, it must necessarily be exercised by the National Government.'"
Then follows many illustrations from decided cases of the application of the principle that one may be guilty by the same act of a violation of a statute of the State and an act of Congress, and concludes:
"In our opinion the irresistible conclusion from these decisions is that State legislation which in its practical operation is appropriate to enforce the chief aim of the Eighteenth Amendment, and to make it more completely operative in all its amplitude is not suspended, superseded, set aside, or rendered inapplicable in its denouncements by the Volstead Act, in so far as not incompatible therewith or in contravention of its provisions."
The conclusions of the Court are satisfactory to us, and applying them to the facts in the record, we hold that the defendant has been properly convicted on the count charging him with having liquor in his possession for the purpose of sale, because the statute denouncing this as a crime is not in conflict with the amendment or the Volstead Act, and on the contrary, is in aid of and carries out the purpose of both.
It is not so clear that the conviction on the count for receiving more than one quart of liquor in fifteen days can be sustained, as the statute under which this count is framed permits the possession of liquor in limited quantities for beverage purposes, which may conflict with the Volstead Act, but it is not necessary to decide this question, as the verdict on the other count is sufficient to sustain the judgment. S. v.Coleman, 178 N.C. 760.
No error.