Gertrude Spousta, Appellee, v. Anton Berger, Appellant.

Gen. No. 7,604.

1. INTOXICATING LIQUORS—*sufficiency of declaration under Civil Damage Act.* A declaration by a wife for damages under the Dramshop Act, Cahill's Ill. St. ch. 43, ¶ 74(10), sufficiently alleges that defendant was engaged in the dramshop business, or a business where he sold, dispensed or gave away intoxicating liquors, to permit the admission of evidence of sales thereof, where it is alleged that defendant, in a building then and there owned and occupied by him, sold and gave to plaintiff's husband intoxicating liquor and then and there caused him to be and become intoxicated.

2. INTOXICATING LIQUORS—*sufficiency of declaration under Civil Damage Act.* In an action by a wife under the Civil Damage Act, Cahill's Ill. St. ch. 43, ¶ 74(10), for damages resulting from the sale of intoxicating liquor to her husband by defendant, predicated upon the conviction and imprisonment of the husband for crime committed as the result of intoxication, the declaration was sufficient to sustain the admission of evidence, although there was no direct allegation that the sale or gift of liquor by defendant was the proximate cause of the crime in question, where defendant did not raise the question by demurrer but pleaded the general issue.

3. INTOXICATING LIQUORS—*Civil Damage Act not invalidated by*

Spousta v. Berger, 231 Ill. App. 454.

*Eighteenth Amendment and Volstead Act.* The enactment of the National Prohibition Act and the adoption of the Eighteenth Amendment did not invalidate the provisions of the Dramshop Act, permitting a recovery of damages by a wife under the Civil Damage Act, Cahill's Ill. St. ch. 43, ¶ 74(10), from one who sold intoxicating liquor to her husband to her damage.

4. INTOXICATING LIQUORS—*exemplary damages recoverable for unlawful sale to habitual drunkard.* An instruction in an action under the Civil Damage Act permitting the assessment of exemplary damages against defendant if the jury "believe from a preponderance of the evidence that the plaintiff's husband was an habitual drunkard and that defendant knew thereof and sold intoxicating liquors" to him is not erroneous for failing to require proof that the sale was wilful and wanton, where it included all essential features of a mandatory instruction and the sales were made in violation of state and national prohibition laws.

5. INTOXICATING LIQUORS—*wife's recovery for loss of support not dependent upon proof that husband's intoxication was proximate cause.* In a wife's action for damages for loss of support under the Civil Damage Act, an instruction defining proximate cause as meaning "an efficient cause; the cause, although operating with other causes, produces the result," is not erroneous, recovery in such action not being dependent upon proof that the husband's intoxication was the immediate or direct cause if it is shown that it was the cause.

6. INTOXICATING LIQUORS—*propriety of instruction on element of damage in action under Civil Damage Act.* In an action by the wife for damages for loss of support by reason of the husband's intoxication from liquor sold by defendant, predicated upon the husband's imprisonment for crime committed as the result of his intoxication, an instruction referring to the husband's imprisonment is not objectionable for failure to refer to any particular duration of his confinement, where the record of his conviction and sentence was in evidence and shows that he was committed to be confined until discharged by due process of law, and defendant requested no instructions on the subject.

7. HARMLESS AND PREJUDICIAL ERROR—*refusal to give instruction harmless where subject-matter covered by instructions given.* In an action for damages under the Civil Damage Act, the refusal to give an instruction requested by the defendant was not prejudicial where the subject-matter thereof was fully covered in other instructions given.

8. INTOXICATING LIQUORS—*when verdict for damages under Civil Damage Act sustained by evidence.* A verdict for the wife suing for damages for loss of support from the intoxication of her husband from liquor sold him by defendant is not reversible as having

resulted from passion and prejudice, where the evidence, although conflicting, tends to prove that defendant ran a saloon for the unlawful sale of intoxicating liquor during the period in question, that he sold liquor to plaintiff's husband who was seen drunk in the saloon, that while drunk he forged an order for the payment of money to secure money to buy liquor, and was convicted and imprisoned for forgery, and that prior to the sales in question he had worked and supported his family and did not habitually become intoxicated, and the verdict is only reasonably compensatory in amount.

9. INTOXICATING LIQUORS—*wife's recovery of damages under Civil Damage Act not dependent upon proof of proximate cause.* In a wife's action for damages for loss of support under Dramshop Act, sec. 9, Cahill's Ill. St. ch. 43, ¶ 74(10), resulting from defendant's sale of liquor to the husband, proof that defendant's sales to the husband were the cause of the injury to plaintiff is sufficient, without proof that they were the proximate cause.

Appeal by defendant from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the April term, 1923. Affirmed. Opinion filed July 10, 1923.

WILLIAM E. FAIN and HILL & BULLINGTON, for appellant.

LESTER K. VANDEVER and LANE, DRYER & BROWN, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This case was commenced in the Montgomery county circuit court on September 17, 1921, in an action on the case. The declaration filed alleges that on the 10th day of May, 1920, plaintiff was the wife of Edmond Spousta, a coal miner, earning, to wit, $1,800 per year, and providing a livelihood for plaintiff and their two children; that defendant, in a building then and there owned and occupied by him, sold and gave to plaintiff's husband intoxicating liquors, causing him to be and become intoxicated, and be and become an habitual drunkard; that plaintiff's husband became

and was totally ruined in bodily and mental health; that he was obliged to and did give up and abandon his occupation, and was incapacitated from earning a livelihood for himself and plaintiff and their children, including a third child born since the 10th day of May, 1920; that plaintiff and her husband and their three children have been reduced to a condition of poverty and want, to the plaintiff's damage of $10,000. Plaintiff prosecuted as a poor person.

On January 24, 1922, the first additional count to the declaration was filed, and alleges the sale and gift of intoxicating liquors by defendant to plaintiff's husband, by means of which he became intoxicated and became an habitual drunkard, and wasted and squandered his money, and became greatly impoverished, reduced and degraded and wholly ruined as well in his mind and body as in his estate; that he neglected and ceased to attend to his occupation as a coal miner, or to follow or pursue any calling or occupation whatsoever, or in any manner to earn or provide support and maintenance for the plaintiff, and that by reason of the intoxicating liquors so sold and given, he became and was drunk; that on, to wit, the 10th day of September, 1920, on account of his drunken and intoxicated condition, he did feloniously pass as true and genuine a certain false, forged and counterfeit instrument in writing, to wit, an order for the payment of money, to wit, a certain order on the Local Union No. 493, United Mine Workers of America, dated September 8, 1920, at Nokomis, Illinois, for the payment of $30 to C. W. Compton. Indorsements on the back are "C. W. Compton, E. Spousta."

This count further alleges that plaintiff's husband, *alias* E. Spousta, then and there well knowing the same to be false, forged and counterfeited, with intent then and there to prejudice, damage and defraud one other than himself, and because of so feloniously, fraudulently and falsely passing as true and genuine said false, forged and counterfeited instrument in writing,

plaintiff's husband was on the 15th day of June, 1921, arrested on the charge of forgery, and on account of being a drunkard, as aforesaid, was unable to give a recognizance for his appearance in court until the 25th of October, 1921; that he remained in the county jail of Montgomery county until said last date, and is still under indictment; that because of the forgery which was caused by the liquor sold and given by defendant, said Edmond Spousta was ruined in reputation, and was unable to obtain employment and to provide for plaintiff.

A second additional count was filed which, in addition to matters set forth in the first additional count, alleges plaintiff's husband is still under indictment and is bound by criminal recognizance to appear in the circuit court to answer upon the charge of forgery.

Plaintiff's third additional count was filed February 3, 1922, and sets forth the arrest of her husband June 15, 1921, for forgery; that he was thereafter indicted by the grand jury for forging the name of C. W. Compton; that on January 27, 1922, he pleaded guilty to said crime of forgery and was sentenced to the Southern penitentiary of the State of Illinois until discharged by due process of law, and that plaintiff was injured in consequence of the intoxicating liquors wrongfully sold and given to her husband by the defendant.

In each count it is further alleged: "And at the time aforesaid, and on various other days and occasions prior to the commencement of this suit, the defendant, Anton Berger, in a building then and there owned and occupied by him,  *  *  *  sold and gave to the said Edmond Spousta, then being the husband of the plaintiff, intoxicating liquor and then and there caused the said Edmond Spousta to be and become intoxicated," etc.

To the declaration and each additional count defendant filed his plea of the general issue.

Plaintiff's husband had been a coal miner for sev-

eral years prior to the filing of this suit. He had worked at Nokomis and Pana and had spent some time at Coalton, near those towns, where defendant's place of business was, although his family then lived in Pana. He took the position of recording secretary of the Mine Workers' Local at Nokomis in the month of July, 1920, and was installed at that time as secretary, and continued to act as secretary until or about the time of his arrest for forgery. The order or voucher set out in plaintiff's first additional count was not introduced in evidence by plaintiff, but the testimony relative to that order or voucher was—that it was a genuine order drawn September 8, "1920" for the payment of money to C. W. Compton, a doctor at Springfield, Illinois, for services rendered one of the members of the local.

It further appears from the record that plaintiff's husband was indicted for forging the signature of C. W. Compton as an indorsement upon that order or voucher.

The record shows that plaintiff's husband forged other checks and orders in 1921 and defendant introduced seven such instruments in evidence, which were uncontradicted. There is testimony in the record, ample and sufficient to support the verdict, tending to show that defendant ran a saloon at Coalton and that plaintiff's husband purchased drinks, "white mule," and intoxicating liquors at defendant's place of business, although the defendant testified that after prohibition went into effect he never sold any intoxicating liquors. There is much testimony tending to show that plaintiff's husband in May, 1920, and after that time, was drunk and intoxicated a considerable portion of the time, and that by reason of drink and intoxication he became useless to himself and family, lost his position and became habitually a slave to drink, to procure which, as he, himself, testifies, he forged the documents in question. The deposition of plaintiff's husband was taken at the Southern Illinois

penitentiary, to which he was committed in January, 1922, for the crime of forgery, growing out of said matters. It was shown by the records of the coal companies that plaintiff's husband earned $1,137.85 for 129 days; that he worked in the mines in the year 1920, out of 143 days that the mines worked, but there was evidence tending to show that little of this was expended upon his wife and family.

The trial resulted in a verdict for plaintiff, fixing her damages at $3,000, for which amount judgment was rendered. From that judgment this appeal is prosecuted.

Appellant assigns various errors as ground for reversal:

*First:* It is insisted that the court erred in the admission of evidence, over appellant's objection, for the reason that there was no averment in the declaration that defendant was either engaged in the dramshop business or engaged in a business where he sold, dispensed or gave away intoxicating liquor, and appellant cites *Schulte v. Schleeper,* 210 Ill. 357, and *Cruse v. Aden,* 127 Ill. 231, as bearing out this contention.

Appellant further contends, in this connection, that the declaration must allege that the sale or gift of liquor was the proximate cause of the forgery complained of and that no such language is used in the charging part of the declaration.

In *Cruse v. Aden, supra,* the court held that "the Dramshop Act is highly penal in its character. It provides remedies unknown to the common law, and we have invariably held that it should be strictly construed, and that a plaintiff must bring himself clearly within its terms." This language is quoted by the court in *Schulte v. Schleeper,* 210 Ill. 357. In other words, the remedies provided in section 9 of the Dramshop Act [Cahill's Ill. St. ch. 43, ¶ 74(10)] are purely statutory and were not known at common law.

Appellant contends further, quoting *Cruse v. Aden,
supra* (p. 236):

"Both the general title 'Dramshops,' and the title
of the act itself indicate that the various provisions of
the statute are aimed at dramshops and at those who
are engaged, either lawfully or unlawfully, directly or
indirectly, in the liquor traffic."

The declaration alleges that the "defendant, in a
building, then and there owned and occupied by him,
sold and gave to the said Edmond Spousta,   *   *   *
intoxicating liquor and then and there caused the said
Edmond Spousta to be and become intoxicated," etc.
It may be, if the word "gave" were standing alone,
the charge would not be sufficient, in line with appel-
lant's argument, to constitute a cause of action under
section 9 of the Dramshop Act; but the declaration
and each count uses the word "sold" also, and this
has been held a sufficient charge in *Callahan v. Healy,*
209 Ill. App. 638; *Whiteside v. O'Connors,* 162 Ill.
App. 108; *Loftus v. Hamilton,* 105 Ill. App. 72. and
*Stacey v. Robbin,* 194 Ill. App. 349.   But in this con-
nection appellant contends that the declaration must
allege that the sale or gift of liquor was the proximate
cause of the forgery complained of and no such lan-
guage is used in the charging part of the declaration,
quoting *Schulte v. Schleeper, supra; Schulte v. Menke,*
111 Ill. App. 215, and *Austin v. Bass,* 211 Ill. App.
1.   The first two cases cited by appellant were decided
upon demurrers filed to the declaration and *Austin v.
Bass,* cited, does not go into this direct question, as
appears by the abstract of the decision.   In the case
at bar, appellant did not demur to the declaration but
pleaded the general issue.   In *Schulte v. Schleeper,
supra,* and cited by appellant, what the court there
said was on the question of law, raised by defendant's
demurrer to plaintiff's declaration, and the court said
in *Schulte v. Schleeper* (p. 361):

"The question, what was the proximate cause of an
injury, is one for the jury where an issue is formed

and a trial had by a jury and there is any evidence tending to show that the wrong complained of was the proximate cause of an injury. (*Meyer v. Butterbrodt,* 146 Ill. 131.) But where the question is presented by a demurrer to the declaration it is one of law and was so treated by us in the case of *Hullinger v. Worrell,* 83 Ill. 220.''

We conclude, on the issue made, that appellee's declaration in this cause was sufficient, and that appellant's objection to the evidence submitted was properly overruled. *Whiteside v. O'Connors,* 162 Ill. App. 108; *Parsons v. Smith,* 164 Ill. App. 509.

Appellant next urges that there was no Dramshop Act in the State of Illinois in force during any period sought to be covered by the declaration, or in any event by any testimony offered at the trial, for the reason that the National Prohibition Act and the amendment to the Federal Constitution invalidate the Dramshop Act of the State of Illinois, stating: The United States Supreme Court, 253 U. S. 350, holds in this regard: ''The first section of the amendment— the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act—whether by Congress, by a State legislature, or by a territorial assembly—which authorizes or sanctions what the section prohibits.'' There was no cause of action at common law that plaintiff could rely upon, and in view of this decision appellant submits that appellee had no cause of action and that none was set up in her declaration or any count thereof.

It will be noted that *State of Rhode Island v. Palmer,* 253 U. S. 350, *supra* (64 L. Ed. 946), holds that the constitutional amendment invalidates such legislative enactments, ''which authorize or sanction what the amendment prohibits.'' It does not invalidate any legislative enactments which may tend to

enforce the constitutional prohibition amendment, and it has been expressly held in *Commonwealth v. Nickerson*, 236 Mass. 281, 128 N. E. 273, 10 A. L. R. 1582: ''In our opinion, the irresistible conclusion from these decisions is that State legislation, which in its practical operation is appropriate to enforce the chief aim of the Eighteenth Amendment and to make it more completely operative in all its amplitude, is not suspended, superseded, set aside nor rendered inapplicable in its denouncements by the Volstead Act, in so far as not incompatible therewith, or in contravention of its provisions''; and the same conclusion is arrived at in *Jones v. Hicks*, 150 Ga. 657, 104 S. E. 771, 11 A. L. R. 1315; *City of Shreveport v. Marx*, 148 La. 31, 86 So. 602; *State v. Fore*, 180 N. C. 744, 105 S. E. 334. We cannot agree with appellant in this contention.

Appellant contends that appellee's instruction No. 1 violates the rule laid down in *Austin v. Bass*, 211 Ill. App. 1, in not requiring it to be proven that the defendant *wilfully* and *wantonly* sold plaintiff's husband intoxicating liquor. The instruction read: ''If you believe from a preponderance of the evidence that the plaintiff's husband was an habitual drunkard and that the defendant knew thereof and sold intoxicating liquors to the plaintiff's husband, then,''—the jury may assess exemplary damages, etc. The other features to cover a mandatory instruction were included. Exemplary damages are permitted by the statute. Appellant, if guilty, was violating the law of the State and of the United States. Under such circumstances, and covered by the wording of this instruction, the action of the appellant, if guilty, was not only wilful and wanton but criminal. This is not a negligence case.

Exemplary damages may be assessed against one selling to an intoxicated person with knowledge of that fact. *Buck v. Maddock*, 67 Ill. App. 466; *Betting v. Hobbett*, 142 Ill. 72; *Earp v. Lilly*, 120 Ill. App. 127.

Appellant complains of instructions five and six, defining proximate cause as meaning, "an efficient cause; the cause, although operating with other causes, produces the result."

In order to recover under the Dramshop Act for the loss of support, the intoxication need not be shown to be the immediate, direct or proximate cause; it is sufficient if it be the cause and it is immaterial whether a jury would consider it a proximate or a remote cause. *Jack v. Prosperity Globe,* 147 Ill. App. 176; *Kennedy v. Whittaker,* 81 Ill. App. 605; *Munz v. People,* 90 Ill. App. 647; *Whiteside v. O'Connors,* 162 Ill. App. 108.

Appellant complains as to instruction number six, in that it referred to the confinement of appellee's husband in the penitentiary, but referred to no particular time that he might remain there and formed a basis for damages without limit. The record of the conviction and sentence was introduced in evidence and was before the jury and showed that appellee was to be confined in the Southern Illinois penitentiary at Chester until discharged by due process of law. We cannot see why appellant was not in as good a position as appellee to determine the duration of Spousta's confinement and ask the court for instructions on that subject. There was no error in giving the said instruction.

Appellant complains that the court refused to give one of the instructions asked for by appellant, the same being defendant's refused instruction number one. This instruction referred principally to the law upon the subject of proximate cause. The instruction was in fact a reiteration of appellant's instruction number eleven given, and all other matters in said refused instruction are fully covered by instructions given, stating the law as fully as appellant was entitled to have the principles stated.

Appellant further contends that the verdict is against the manifest preponderance of the evidence

and is the result of passion and prejudice and that the testimony does not show that the sales of liquor by appellant, charged, even if made, were the proximate cause of plaintiff's injury. At the close of plaintiff's proof and again at the close of all the evidence, appellant moved the court for an instructed verdict and now insists that such instruction should have been given. The evidence was conflicting, but there was evidence submitted by appellee tending to prove that in 1920 and 1921 appellant ran a saloon at Coalton and sold whisky, beer and "mule" to appellee's husband; that sometimes appellant "tended" the bar and at other times appellant's wife served drinks at this bar. Witnesses testified to seeing appellee's husband in the saloon, at the bar, and buying drinks and drinking with him of the same drinks, and that it was whisky and beer, and appellee's husband, according to this testimony, was drunk at the place at different times. Appellant owned the building and it contained this saloon and a miners' hall, on the same floor, off from the saloon, with a door between the two places. In the summer of 1920, appellee's husband was elected secretary of the Miners' Union that met in this hall and was much at the place. In September, 1920, appellee's husband forged the order or check, upon which he was convicted, and appellant has shown seven other forgeries of orders of the union or checks forged by appellee's husband during the period 1920 and 1921. All such forgeries were of instruments in small amounts and appellee's husband testified that they were executed while he was intoxicated and that he has a "hazy idea" that he executed and passed them to obtain money with which to buy liquor. He at least makes this statement as to the forgery upon which he was convicted. There was no contradiction to this testimony and in the nature of things it was not subject to direct contradiction by appellant or his witnesses. The jury had the right to believe this evidence or discard it from all the evidence, facts and

circumstances appearing in evidence. Appellant furnished testimony tending to contradict much of appellee's evidence. It is uncontradicted that appellee's husband was a miner earning about $1,800 per annum and supporting his family and not habitually subject to becoming intoxicated up to the month of May, 1920. This court cannot say as a matter of law that the verdict is manifestly against the weight and preponderance of the evidence. In this state of the case, also, it was the peculiar province of the jury, who were the sole judges of the credibility of the witnesses and the weight to be given to their testimony, to determine where truth lay. No error intervened in the trial calculated to prejudice the rights of the defeated party, and there was nothing in the record tending to show that the jury were actuated by passion, prejudice or partiality or that their verdict was the result of mistake, and the judgment in accordance with their verdict should not be disturbed by a court of review. *Joseph Schlitz Brewing Co. v. Mahozki,* 108 Ill. App. 511; *United Breweries Co. v. O'Donnell,* 124 Ill. App. 24, aff'd 221 Ill. 334; *Sternberger v. Anheuser-Busch Brewing Ass'n,* 203 Ill. App. 86.

Appellant contends that the evidence does not show that the acts of the appellant, if proven, establish that such acts were the proximate cause of the injury. Whether the cause was proximate or remote would be a proper contention in any action brought by some one other than the wife or a child for injury to their support, but the question of proximate or remote cause has no application to suits brought under section 9 of the Dramshop Act by a wife for injury sustained to her means of support in consequence of selling intoxicating liquors to her husband. *Whiteside v. O'Connors,* 162 Ill. App. 108; *Dunnigan v. Ellis,* 162 Ill. App. 185.

It is held that "it is sufficient if it be the cause, and it is 'no matter whether the jury would consider it a proximate or a remote cause.' *Kennedy v. Whittaker,*

81 Ill. App. 605; *Munz v. People,* 90 Ill. App. 647."

The verdict was for $3,000. If the jury properly under the evidence found the defendant guilty, then there is no indication under the evidence that, in the amount of the verdict, the jury were swayed by passion or prejudice or even allowed anything for exemplary damages.

Finding no reversible error in the record the judgment is hereby affirmed.

*Affirmed.*