Robert Pearson, Minor, by Sophia Pearson, His Guardian and Next Friend, et al., Appellants, v. Lois Renfro et al., Appellees.

Gen. No. 9,883.

Opinion filed July 8, 1943.   Rehearing·denied September 21, 1943.

B. Jay Knight and Russell Goldman, both of Rockford, for appellants; B. Jay Knight, of Rockford, of counsel.

Frank P. North, of Rockford, for certain appellees.

Williams & Dunn, of Rockford, for certain other appellees.

Welsh & Welsh, of Rockford, for certain other appellee.

Mr. Justice Dove delivered the opinion of the court.

This cause is here by an appeal from a judgment of the circuit court of Winnebago county in favor of the defendants, appellees, on a directed verdict at the close of the testimony for the plaintiffs, appellants, in an action to recover damages under section 14 of article 6 of the Liquor Control Act. (Ill. Rev. Stat. 1941, ch. 43, par. 135 [Jones Ill. Stats. Ann. 68.042].)

The suit was instituted by Robert Pearson, a minor, John Behrens, Jr., the latter's sister Phyllis, and their respective parents, against the respective proprietors of the Shamrock tavern at Rockford and another tavern at Cherry Valley, and the respective owners of the premises. Robert Pearson, John Behrens, Jr. and Phyllis Behrens lived at home with their parents. Phyllis was 17 years old, and was in high school. Each of the boys was employed at a factory. As to Robert Pearson and John Behrens, Jr. the complaint alleges damages on account of personal injuries incurred in an automobile accident on the night of February 22, 1941, while riding in an automobile driven by George Verble, another minor, whom they claim was intoxicated by liquor purchased at the two taverns mentioned. As to their parents and Phyllis Behrens, the complaint alleges damages for loss of means of support. The grounds assigned for reversal are that the court erred in directing a verdict for appellees at the close of the testimony for appellants and in refusing to admit testimony offered on behalf of appellants.

The testimony discloses that about 7 o'clock p. m., on the night of February 22, 1941, Robert Pearson, John Behrens, Jr., George Verble, and Tony Sanvitis, were at the Shamrock tavern. They had several drinks of beer and whiskey, and some of them played the pinball machines. Several other young people were there. One of them testified he was there a couple of hours and that during that time George Verble must have had a half dozen drinks of whiskey. The four named left the Shamrock tavern at about 8:30 p. m. in an automobile driven by George Verble, intending to go to a dance at Genoa. On the way, they stopped at the Cherry Valley tavern, where they played rotation pool, and each of them had three or four more drinks of whiskey. At each of the taverns they bought drinks for each other in rounds, each one of them paying in turn for a round of drinks.. They left the Cherry Valley tavern about 9:30 p. m. or later, with George Verble driving the car. At a point about two and one-half miles northwest of Genoa, the car, traveling at a high rate of speed, left the black top pavement. and crashed into an electric light pole. Robert Pearson's left leg was broken and he had a brain concussion. He was in a hospital eight weeks, after which he was at home on crutches about two months, and used a cane three or four weeks more, returning to work about August 1, 1941. John Behrens, Jr., suffered a comminuted fracture of the right femur, injuries to his vertebrae and a cerebral contusion. He was in a hospital four and a half months, after which he was at home until about the middle of March 1942, and returned to work on April 30, 1942. Their hospital, doctor and nursing bills were $7.75 and $3,115.80 respectively. The other two boys received minor injuries.

The testimony shows that George Verble was usually quiet, but that at the Shamrock tavern he was "acting silly," talking loud, and that at the hospital after the

accident he was noticeably drowsy and slept through the night. According to the testimony of Robert Pearson he, the witness, was about half intoxicated when they left the Shamrock tavern, and he believed he was intoxicated when they left the Cherry Valley tavern. From all the facts in evidence the only inference reasonably to be drawn therefrom is that George Verble was intoxicated at the time of the accident.

Robert Pearson was 21 years old about one week after the accident. He left school at the age of 16 years and has "earned his own money" ever since. For four months prior to the accident he was earning $24 per week, and upon returning to work was paid at the rate of $27 per week. At the time of the trial he had been accepted for army service, classified as 1-A, with notice of induction a short time before the trial. John Behrens, Jr. was earning $35 a week before the accident and was paid approximately the same wages upon returning to work.

The deposition of Robert Pearson shows he gave his mother 7 or 8 dollars a week, and paid the laundryman and newspaper boy, averaging a total of about $10 per week; that his father pays the grocery bills, pays rent, and gives his wife "what she needs to get along on." John Behrens, Jr. testified that he paid $10 or $15 a week for board and room at home, and used the remainder of his income to pay on his car and clothes.

During the course of the trial Phyllis Behrens testified she did not receive any money from her brother, but that he gave it to her mother and she got it indirectly. The latter part of this testimony was stricken on motion of appellees, and appellants then offered to prove by the witness that for several years prior to the date of the accident John Behrens, Jr. gave her money, averaging about $10 a month, and that the money was used to buy clothes and books, to help her in attending high school. An objection to

the testimony was sustained. Similar offers were made to prove that from the time Robert Pearson was 16 years of age he had contributed approximately $10 a week toward the household expenses and upkeep, and that out of his contributions, his mother had been able to save about $5 a week for her own personal use; that her husband's income was irregular and inadequate because he was addicted to drink at different times, and that he was afflicted with an asthmatic condition which was aggravated in the summer time, and as a consequence his ability to work at his occupation was materially reduced; that John Behrens, Sr. earned about $26 a week, and that the household expenses averaged about $145 a month; that for approximately four years prior to the accident John Behrens, Jr., contributed an average of $12 a week to the support and maintenance of the Behrens home, out of which his mother was able to save about $6 a week for her own use; and that while each of the two boys was recuperating at home the household expenses were increased on the average of $18 per week, on account of necessary special foods and medicines. Objections to the latter offer were sustained on the ground that as to the parents the pleadings did not call for damages for what they paid out. Objections to the other offers were sustained on the ground that none of the parties claiming damages for loss of means of support could recover unless there was a legal liability for such support, and that such a liability arises only under the Pauper Act.

As a basis for the recovery of exemplary damages, appellants offered to prove that at about 8 o'clock on the night of the accident, and on prior occasions, Robert Pearson's mother came to the Shamrock tavern and protested against the sale of intoxicating liquor to him, and had been met with refusals to comply with her protests. The court sustained an objection to the testimony, and refused to admit in evidence the hospital, doctor and nursing bills.

As to the claims of Robert Pearson and John Behrens, Jr. for damages, the trial court held, and we think properly so, that where, as here, it is shown that they repeatedly purchased rounds of drinks which contributed to the intoxication of George Verble, from which their injuries resulted, neither of them is entitled to recover. The reason is, that having by their own conduct brought the injuries upon themselves, they are not such innocent suitors as are contemplated by the statute. (*Forsberg v. Around Town Club, Inc.,* 316 Ill. App. 661; *James v. Wicker,* 309 Ill. App. 397.)

Appellants argue extensively that contributory negligence is not a defense to an action under the Liquor Control Act, but appellees do not claim that it is a defense, and the question is not in issue. *Lester v. Bugni,* 316 Ill. App. 19, relied upon by appellants as holding contrary to the cases above cited, is not persuasive here. The opinion in that case clearly demonstrates the difference between the question, of "provocative conduct" by a plaintiff in contributing to the single purchase of a quart of wine, and the question of contributory negligence of the plaintiff by subsequently riding in a car, which was in bad condition, with a drunken driver, after having repeatedly importuned the driver to take him home. The court held that under the facts those questions were questions of fact for the jury, and upheld a judgment for the plaintiff who was injured in an accident when the car overturned. Appellees make no claim that Robert Pearson and John Behrens, Jr. were guilty of contributory negligence by riding with George Verble while he was intoxicated. The alleged "provocative conduct" in that case is not comparable to the admitted facts in this case.

On the question of the liability of appellees to appellants, other than Robert Pearson and John Behrens, Jr., for loss of means of support, appellees rely upon *Jury v. Ogden,* 56 Ill. App. 100. In that case an

unmarried adult daughter of a divorced, habitually intoxicated father, and who lived with him, but left home on account of his personal violence and threats in consequence of his intoxication, recovered a judgment in the trial court against the saloon keeper who sold him intoxicating liquor, and the owner of the saloon premises, for damages on account of personal injuries and loss of means of support. The court held she could not recover for loss of means of support, because "the means of support referred to in the statute are such as the person intoxicated would be legally bound to furnish," and reversed and remanded the cause to be tried upon the question of personal injuries.

This restricted definition of "means of support" is not in accord with the holdings of our Supreme Court. In *McMahon v. Sankey*, 133 Ill. 636, a widow sued for loss of means of support by the death of her husband while intoxicated. The opinion of the court adopts the definition laid down by the Supreme Court of Ohio in *Schneider v. Hosier*, 21 Ohio St. 98: "In its general sense it embraces all those resources from which the necessaries and comforts of living are or may be supplied, such as lands, goods, salaries, wages, or other sources of income. In its limited sense, it signifies any resource from which the wants of life may be supplied." It appeared in that case that the plaintiff's minor sons gave some part of their earnings to her, but were at home idle a greater part of the time. The court said in the opinion: "Let it be admitted that she derived her means of support from two sources, that is to say, from the earnings of her husband and from the earnings of her sons. If her income from the first source was diminished or cut off by her husband's intoxication, such injury to her means of support would be exactly the same whether she did or did not continue to draw an income from the second source."

Under the definition of "means of support" adopted by the court, the obvious corollary is that if the income from the sons had been cut off or diminished, she would have been injured in her means of support whether she did or did not continue to draw an income from her husband.

The court pointed out in that case that the plaintiff was not entitled to the earnings of the minor children because such earnings belonged to the father during his lifetime. On this point there is an analogy in this case, because John Behrens, Jr. was an adult and Robert Pearson, being allowed to control his own services and income, was emancipated. (*Iroquois Iron Co. v. Industrial Commission*, 294 Ill. 106.)

The court also held in that case that the right of support is not limited to the supplying of the bare necessaries of life, but embraces comforts, what is suitable to the wife's situation and the husband's condition in life, and that it is enough to show that the sources of her future support have been cut off or diminished below what is reasonable and competent for a person in her station in life, and below what they otherwise would have been.

In *Gilmore v. Killion*, 281 Ill. 154, a mother sued for loss of means of support through the death of her adult son by an intoxicated person. The plaintiff lived in the State of Mississippi, where she owned 78 acres of land, which she testified was not sufficient to support her and her husband. The son had been sending her money quite regularly for some time in amounts of from $5.00 up,—once as much as $40. The remittances were used to purchase the necessaries of life. The defendants insisted that in order for the plaintiff to recover, her son being an adult, it was incumbent upon her to prove she was a resident of Illinois and to bring herself within the provisions of the Pauper Act of this State, and that she had a legal right to be supported by her son; and that the fact that he made voluntary

contributions for her support would not be sufficient to entitle her to recover under the statute. In answer to these claims, the court said in the opinion: "There is nothing in the wording of this statute that justifies the argument of counsel on any of these points. Under the reasoning of this court in *Danley v. Hibbard,* 222 Ill. 88, and *Nagle v. Keller,* 237 id. 431, it must be held that these arguments of counsel are without force; and the further argument of counsel, in this connection, as to the mother's means of support by her husband or from the farm she owned in Mississippi, cannot be sustained in view of the holdings of this court on a somewhat similar state of facts in *Deel v. Heiligenstein, supra."* (244 Ill. 239.)

These two decisions of the Supreme Court fit the circumstances in this case, and it would serve no good purpose to analyze the cases cited therein. The testimony admitted and that offered by appellants was sufficient to require submitting to the jury the question of the loss of means of support by appellants, other than Robert Pearson and John Behrens, Jr.

Under the pleadings, the trial court did not err in refusing to admit in evidence the hospital, doctor and nursing bills, or the claims for increased household expenses while the two boys were recuperating. Neither Robert Pearson nor John Behrens, Jr., was entitled to recover anything in the suit, and there is no allegation in the complaint of any property injury to any of the other appellants; and there being no claim for injury on account of the intoxication of Robert Pearson, the offered testimony as to his mother's protests against the sale of intoxicating liquor to him, as a basis for exemplary damages, was also properly excluded.

That part of the judgment of the trial court in favor of appellees as to the claims of Robert Pearson and John Behrens, Jr. is affirmed. That part of the judgment as to the claims of the other appellants for loss

of means of support is reversed and the cause is re-manded with directions to proceed in accordance with the views herein expressed.

*Reversed in part and remanded with directions.*