Russell McClure, Bertha M. McClure, Gladys Lynn and Mable Claxton, Plaintiffs-Appellees, v. Frank Lence, Defendant-Appellant.

Term No. 51-M-4.

Opinion filed November 29, 1951. Released for publication January 5, 1952.

R. Wallace Karraker, of Jonesboro, and Harold N. Lingle, of Anna, for appellant.

Ford L. Rendleman, of Anna, and R. W. Harris, of Marion, for appellees.

Mr. Justice Bardens delivered the opinion of the court.

Plaintiffs-appellees, hereinafter referred to as plaintiffs, filed an action for damages against defendant-appellant, hereinafter called defendant, pursuant to the provisions of the civil liability section of the Dram Shop Act, par. 135, ch. 43, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 68.042]. The suit was based upon plaintiffs' claims for injury to their means of support growing out of the deaths of their respective minor children. A jury trial resulted in three separate verdicts of $5,000 as damages for each death. Judgment was entered thereon and the defendant appeals.

From the evidence it appears that on the evening of October 26, 1949, James McClure, Edgar Green, and Clarabelle Adams, the minor intestates of the respective plaintiffs were patrons of the defendant's tavern located two miles south of the city of Jonesboro, Illinois. With them were Melvin Wright and Marjorie Adams, a sister of one of the decedents, both of whom were likewise minors. Sometime between 11:00 p. m. and midnight these five young people got into a 1937

159

Chevrolet coupe with Melvin Wright driving. A few moments later while crossing a railroad track the automobile stalled and was struck by a Gulf, Mobile & Ohio train, resulting in the deaths of plaintiffs' intestates. Melvin Wright jumped from the car seconds before the impact and escaped injury. Marjorie Adams was injured and removed to the hospital where the ignition key to the Chevrolet was found in her coat pocket. Plaintiffs allege that Melvin Wright and Marjorie Adams were intoxicated as a result of consuming alcoholic liquor at defendant's tavern and thus bring the factual situation within the purview of the civil liability provisions of the Illinois Dram Shop Act, claiming that the accident resulted from Melvin Wright's driving or from Marjorie Adams' withdrawing the ignition key.

From the pleadings it appears that prior to filing the instant suit, plaintiffs Russell McClure, Gladys Lynn, and Mabel Claxton, as administrators of their respective decedents' estates, executed identical releases to the railroad. Because of the significance such instruments assume in the determination of the issues raised on this appeal, we deem it advisable to quote one such release in full:

"Final Settlement and Release"

"For the Sole Consideration of Five Hundred and no/100 Dollars to me (us) in hand paid, the receipt of which is hereby acknowledged, I (we) do hereby release, acquit, and forever discharge Gulf, Mobile and Ohio Railroad Company, its lessors, lessees, licensors, licensees, and any and all lines or companies owned, operated or controlled by or allied with it, their agents, servants and employes, and each of them, together with their and each of their, successors and assigns and all others, from all claims, demands, suits, actions, causes of action, and damages whatsoever, at law or in equity, which I (we) now, or may, can or might have against

160

them, or any of them, in consequence, directly or indirectly of any matter or thing done or omitted or suffered to be done by any of them prior to and including the date hereof, and more especially on account of the death of James Edward McClure, who was fatally injured on or about October 26, 1949, near Jonesboro, in Union County, Illinois, when riding in an automobile which was struck on a grade crossing by a train of the Gulf, Mobile and Ohio Railroad.

"This settlement being in full and complete settlement and release of any and all claims I now have, or may hereafter have on account of said accident, and is in full settlement of all other claims to and including the date hereof.

"And for said consideration, it is covenanted by the undersigned that no suit of any kind or character shall be instituted for a recovery of any sort against said Railroad Company or any of the parties herein mentioned, each and all of whom expressly deny all liability to the undersigned, on account of the occurrence hereinabove especially mentioned, or on account of any other matter or thing done or omitted or suffered to be done by any of said parties prior to and including the date hereof; and this release and covenant shall be forever binding upon the undersigned, as well as upon the heirs, administrators, executors, successors and assigns of the undersigned.

"It is acknowledged by the undersigned that the said sum of money was and is the sole consideration for this release and covenant and that no promise of any kind, and no representation of fact or opinion has been made by any of the above named parties, or anyone on their behalf, to induce this settlement, and that this instrument expresses all the agreements and understandings between the undersigned and the parties above mentioned; and this settlement is in all respects complete and final.

161

"Signed and Sealed this, the 3rd day of November, 1949, at Jonesboro, Illinois.

/ s / Russell McClure, (Seal)
As Administrator of the Estate
of James Edward McClure, Deceased.
(Seal)

"Executed in the presence of:
/ s / Bertha McClure
/ s / John L. Stewart."

Defendant, in his answer, raised a special defense against the action of each plaintiff based upon the execution of the three releases to the railroad. He contended that said releases were given for the same deaths as were now being sued for and represented full compensation for loss of support in favor of all next of kin, including plaintiffs; that the damages resulting from said deaths were inseparable and that therefore the settlements with the Gulf, Mobile and Ohio Railroad Company by the administrators were settlements of all claims of the respective next of kin of the decedents. On a motion to strike the said special defenses made before the commencement of the trial of the cause the plaintiffs argued that the two causes of action were based on two entirely different and separate statutes of the State of Illinois; that the Injuries Act and the Dram Shop Act created separate and distinct actions with different parties plaintiff and a different measure of damages; that therefore the releases given to the railroad under the Injuries Act could not operate to bar the claims for injury to plaintiffs' means of support under the Dram Shop Act. The trial judge sustained the plaintiffs in their contentions and the special defenses were stricken. The cause thereupon proceeded to trial and resulted in the jury verdicts and judgments for the plaintiffs as aforesaid. The jury further determined in answer to special

162

interrogatories submitted to them that both Melvin Wright and Marjorie Adams were intoxicated and that the latter withdrew the keys from the ignition but that such withdrawal would not stop the running of the motor. Defendant's motions for a directed verdict at the conclusion of the plaintiffs' evidence and upon all the evidence were denied as were motions for a judgment notwithstanding the verdict and for a new trial.

The appellant assigns error on the court's ruling striking his special defenses which pleaded the releases referred to. A reading of the instrument shows that it is a full technical release under seal. The legal proposition is thus presented on appeal as to the effect of a release given under the Injuries Act by an administrator upon an action under the Dram Shop Act by the next of kin for injury to means of support sustained by the death. It poses a different problem from that presented in *Hyba v. C. A. Horneman, Inc.*, 302 Ill. App. 143, 23 N. E. (2d) 564, in which a covenant not to sue was given under similar circumstances and which the court held would not bar the subsequent Dram Shop action. Nor can the answer be quickly gathered from *Manthei v. Heimerdinger*, 332 Ill. App. 335, 75 N. E. (2d) 132, in which the court concluded that a release of common-law action for injuries given by the individual who sustained injuries would effectively bar a subsequent proceeding under the Dram Shop Act by that same individual for the same injuries.

■ ■ That the two Acts under consideration are separate and distinct and based upon different powers of the state has often been concluded by the courts of review in this state. *O'Connor v. Rathje*, 368 Ill. 83, *Hyba v. Horneman, Inc., supra, Skillman v. McDowell*, 317 Ill. App. 85, 45 N. E. (2d) 574, *Howlett v. Doglio*, 402 Ill. 311, 83 N. E. (2d) 708. The Injuries Act creates a cause of action in the personal representative of the decedent for the benefit of the next of kin to recover

163

damages for their "pecuniary injury" resulting from the death. "Pecuniary injury" has been broadly construed to encompass any deprivation of benefits, present or prospective, resulting from the death which can be measured in monetary terms or which partakes of a pecuniary nature. *Wallace v. City of Rock Island,* 323 Ill. App. 639, 56 N. E. (2d) 636; *Hudnut v. Schmidt,* 324 Ill. App. 548, 58 N. E. (2d) 929. Thus, recovery may be had by the lineal next of kin without proof of actual support from the decedent. *Wilcox v. Bierd,* 330 Ill. 571, 162 N. E. 170. Under the Dram Shop Act a cause of action is created for the benefit of "every husband, wife, child, parent, guardian, employer or other person who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person." The phrase "means of support" is literally construed to require as a prerequisite to recovery that the decedent did in fact render support, whether or not he was legally required to do so, and is thus a considerably more restricted measure of damages than the "pecuniary injury" yardstick. *Cook v. Kirgan,* 332 Ill. App. 294, 75 N. E. (2d) 120; *Pearson v. Renfro,* 320 Ill. App. 202, 50 N. E. (2d) 598. Therefore, under the Dram Shop Act, where the injury results in death under circumstances where the decedent himself might have maintained an action for injuries had he lived, a situation is created where two remedies are potentially available to the next of kin: an action for pecuniary injury under the Injuries Act and an action for injury to means of support under the Dram Shop Act.

Does this require the conclusion that the legislature by its action intended that two recoveries should be available for a single ascertainable injury? We think not, for overriding all of the multiple remedies and actions created by these two statutes is the salutary

164

principle rooted deeply in our law that for one injury but one satisfaction may be had. *Aldridge v. Morris,* 337 Ill. App. 369, 86 N. E. (2d) 143; *McFadden v. St. Paul Coal Co.,* 263 Ill. 441, 445; *Koltz v. Jahaaske,* 312 Ill. App. 623, 628, 38 N. E. (2d) 973; *Chapin v. Chicago & E. I. R. Co.,* 18 Ill. App. 47; *Cleveland, C., C. & St. L. R. Co. v. Hilligoss,* 171 Ind. 417, 86 N. E. 485. While it is no defense for wrongdoers that others, whether jointly or independently, have aided in causing the harm, that does not mean that an injured party has a right to derive a profit from his injury. In the *McFadden* case, *supra,* an action by a father as administrator under the Injuries Act, the court was confronted with a release given by the lineal heirs of decedent for a settlement under the Mine Act (now chap. 93, sec. 28c, Ill. Rev. Stat.) [Jones Ill. Stats. Ann. 82.029]. The question presented, as stated by the court, was:

"Whether, in case of the death of an employee in a mine, caused by wrongful neglect or default of an employer, so that an administrator can maintain an action for the consequent damages under the general act, and the facts will also sustain an action for the same damages under the act relating to mines, both actions can be brought and a recovery had in each, or whether the two statutes provide separate remedies for the same injury and damage and but one recovery can be allowed."

The court concluded:

"If this suit could be prosecuted after the settlement and the payment of the damages which the lineal heirs were entitled to recover, and; which under the decisions of this court were the whole damages resulting from the death, there would be a double recovery for the same loss and damage. If either party having by the statute the right of action for the damages resulting from the death should settle the claim and release

the cause of action, the whole cause of action in either would be released and gone. . . . The fact that a suit may be brought under either act does not affect the question whether the same damages may be recovered twice.''

Recovery under the Injuries Act was thereupon denied. Again, in the *Chapin* case, *supra,* the court said:

''Whether they were joint tort feasors or not we do not deem it important, in the view we take of the case, to decide. It is enough if they were both liable for the same injury. . . . Plaintiff, in this case, had a right of action against either company for the injury he received, whether he could have maintained a joint action or not. If this be so, then a release to one discharged both.''

In the course of its opinion the court quoted with approval the following language from *Brown v. City of Cambridge,* 3 Allen (Mass.) 474;

''It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him discharges the whole. The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally. . . . If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others. A door would thus be opened to a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason.''

In the *Hilligoss* case *supra,* cited with approval by the court in the *Manthei* case, *supra,* the court said:

"It is an ancient and well established rule almost without exception in England and America that for a single injury there can be but one recompense. When more than one unite in the commission of a wrong, each is responsible for the acts of all and for the whole damage; also, where separate and independent acts of negligence by different persons concur in perpetrating a single injury, each is fully responsible for the trespass. Courts will not undertake to apportion the damage in such cases among the joint wrongdoers. The injured party has, at his election, his remedy against all or any number. . . . He may elect to look to one only and if he accepts from that one a benefit or property in satisfaction and release, he can go no further. He can't have a second satisfaction. Having had a reparation from one who was responsible for all the damage and released him, all others who were jointly, or jointly and severally liable are also released. One satisfaction is a bar to further proceedings on the same cause of action."

Moving to the facts here presented we are met with a release of the cause of action created under the Injuries Act. This must be taken under the law of Illinois to import a satisfaction of the claim of the next of kin for "pecuniary injury" the measurement of which in turn necessarily included any loss based upon any of the decedents' actual support of plaintiffs. This release, of course, could have no effect upon anyone claiming an injury to property under the Dram Shop Act or upon any "other person" presenting an injury under such act who was not identified in interest with the next of kin or who had not benefited by the proceeds prompting the release. But we do not believe the legislature intended to go so far as to permit the next of kin to recover twice their damages based on what support the decedent was actually contributing at the time of his death. The facts of each case must be analyzed

167

to determine whether two, or possibly even more, separate legal injuries have resulted from one death. The guiding query in each case is: has the injury upon which this action is based already been satisfied or released?

██ We have carefully examined the cases relied upon by plaintiffs on this appeal and feel that they are adequately considered and disposed of in the opinion of the court in *Aldridge v. Morris, supra.* In that case the court was discussing a covenant not to sue, but the treatment and classification of the cases is applicable in the case at bar. We therefore conclude that while in some circumstances multiple actions may grow out of a death creating liability under the Dram Shop Act, any such actions are limited by the rule that for a single injury but one satisfaction may be had; that the injury to "means of support" is necessarily included in the "pecuniary injury" for which recovery is permitted under the Injuries Act; and that the releases given in the instant case legally import a satisfaction of said injuries. Consequently, the trial court was in error in sustaining the plaintiffs' motions to strike the defendant's special defenses.

██ The defendant next contends that the trial court was in error in giving the following instruction on behalf of the plaintiffs:

"You are instructed that beer is an intoxicating liquor and it is a matter of general knowledge that all alcoholic liquors are intoxicating in varying degrees. It is well known that the effect of alcohol upon all persons is not the same but may be widely different, and that an individual who has a slight amount to drink may in some instances be more dangerous than a person who shows signs of intoxication. Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated. Although he can walk straight, attend to his business, and may not give

outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited from it and not to possess that clearness and control of himself that he otherwise would have, he is intoxicated.''

This language appears in the course of the court's opinion in *Osborn v. Leuffgen,* 381 Ill. 295, 45 N. E. (2d) 622, 624, and in its reference to ''general knowledge'' and to what is ''well known'' it is clearly argumentative rather than a statement of the law governing the case and should not have been given.

It is further contended by the defendant that the introduction into evidence of a statement admittedly signed by the witness Melvin Wright constituted error. The plaintiffs urge that such statement was properly admitted as impeaching the testimony of the witness on the trial. It is unnecessary for us to pass upon this assignment because in the event of another trial, the error, if any was made, could be obviated by reference to the case of *Illinois Central R. Co. v. Wade,* 206 Ill. 523.

The cause will, therefore, be reversed and remanded to the circuit court of Union county with instructions to overrule the plaintiffs' motions to strike the defendant's special defenses and for further proceedings consistent with the views here expressed.

*Reversed and remanded.*

CULBERTSON, P. J. and SCHEINEMAN, J., concur.