# GLENN W. BUNDY AND ANOTHER v. CITY OF FRIDLEY AND ANOTHER.

122 N. W. (2d) 585.

June 21, 1963—No. 38,663.

*Iverson, Coulter & Nelson,* for appellants.
*Schermer & Gensler,* for respondents.

MURPHY, JUSTICE.

This case is before us on appeal from an order dismissing an action brought under the Civil Damage Act (Minn. St. 340.95). We are asked to determine the extent of damages recoverable within the meaning of the term "means of support" as used in said act.

The plaintiffs are the parents of a minor child who was struck and killed by an automobile driven by one allegedly intoxicated. The action is brought against two municipally owned liquor stores which are alleged to have illegally sold intoxicating liquor to the driver. After the plaintiffs rested, the trial court granted the defendants' motion for dismissal "on the ground that no proof has been offered as to any loss in the means of support." It appears from the files that the father, as trustee

and next of kin, had brought prior action against the negligent driver under the death-by-wrongful-act statute (Minn. St. 573.02). This action was terminated by settlement of $8,000, which included funeral expenses occasioned by the minor's death. It must be conceded that the settlement under the death-by-wrongful-act statute does not preclude a subsequent action under the Civil Damage Act. Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N. W. (2d) 794, 75 A. L. R. (2d) 459; Ritter v. Village of Appleton, 254 Minn. 30, 93 N. W. (2d) 683; and Adamson v. Dougherty, 248 Minn. 535, 81 N. W. (2d) 110.

The issue with which we are here presented is stated by appellant as follows:

"The question presented in this appeal is whether the trial court erred in interpreting *Minnesota Statute* 340.95 and granting a dismissal of the plaintiffs' cause of action on the grounds that the plaintiffs had shown no proof that their minor ten-year-old son offered any monetary support to his parents."

It should be noted at the outset that § 340.95, the Civil Damage Act, gives a right of action to parents injured in person, property, or means of support by an intoxicated person or in consequence of the intoxication of any person against the seller for furnishing the liquor which caused the intoxication, in whole or in part.[1]

The narrow issue is whether the record supports a claim that the parents have been injured in means of support by reason of the death of their child. It is unnecessary for the purposes of this decision to discuss the facts as they relate to the sale of the intoxicating liquors or to the accident which resulted in the minor's death. There is no issue as to

---

[1]Section 340.95 provides: "Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

liability. It is only necessary to refer briefly to the record as it bears upon the minor's relation to his parents. It appears from the record that Douglas Bundy at the time of his death was 10 years of age. His father is a lawyer. He resided with his parents in a suburban Twin Cities area and had attended the third grade in school. He was the oldest of four children and assisted his parents in caring for his younger brothers and sister. He was apparently a well-adjusted, intelligent boy and also assisted his parents by rendering small yard and household services. He participated in family activities and contributed to the enjoyment of the family life. It is not contended that he had a monetary income or that he contributed financially in any way to the support of his family.

It is the plaintiffs' contention that it is not necessary for recovery under the Civil Damage Act that they establish loss of financial contributions, or that their standard of living has been affected by the child's death. They claim, however, that they have sustained a pecuniary loss cognizable as a loss of means of support, even though they were not financially dependent upon their son for support. They base this contention on our recent decision of Fussner v. Andert, 261 Minn. 347, 113 N. W. (2d) 355, which extended the measure of damages under § 573.02, subd. 1, so as to cover not only economic loss, but also noneconomic incidence of service involved in the society and companionship of the deceased child. In other words, we are asked to equate the term "means of support" as found in the Civil Damage Act with the term "pecuniary loss" as found in the death-by-wrongful-act statute. It is contended that the measure of damages comprehended by these terms is coextensive.

The distinctions between damages recoverable under the Civil Damage Act and the death-by-wrongful-act statute are discussed in Beck v. Groe, 245 Minn. 28, 34, 70 N. W. (2d) 886, 892, 52 A. L. R. (2d) 875, 883, where we pointed out:

"By the wrongful death act the surviving spouse and next of kin are given rights within the limits of the statute to recover damages measured by the monetary loss to those who come within its provisions. * * * The element of dependency is not involved in this statute; the element of pecuniary loss is. * * *

\* \* \* \* \*

"The wrongful death act and the civil damage act are wholly unrelated both as to scope and purpose."

Although we have adopted a generally broad and liberal attitute toward the Civil Damage Act,[2] we are nevertheless, in construing the term "means of support," limited to its natural and ordinary meaning consistent with common usage of the term. 17 Dunnell, Dig. (3 ed.) § 8968. That the legislature did not intend to equate pecuniary injuries with injury to means of support is obvious from the fact that it expressly enumerated the distinct types of injuries for which recovery could be had, without employing the general phrase utilized in the death-by-wrongful-act statute. Had it seen fit to permit recovery for pecuniary loss, appropriate language was available for that purpose. The death-by-wrongful-act statute affords the surviving spouse and next of kin a remedy for single pecuniary loss. The Civil Damage Act provides a classification of actionable injuries for which damages may be had.[3]

In discussing the term "means of support" as it applies to the wife of an injured husband, we said in State Farm Mutual Auto. Ins. Co. v. Village of Isle, 265 Minn. 360, 366, 122 N. W. (2d) 36, 40:

"* * * Generally speaking, in actions under civil damage enactments it has been held that 'means of support' has reference to the standard of living to which a wife is accustomed, taking into consideration the physical capabilities and earning capacities of her husband, and that it should not be limited to an evaluation of the bare necessities which might sustain her."

In a parents' action under the Civil Damage Act for the death of an unmarried minor child, the Supreme Court of North Dakota in considering the extent of recovery for damages resulting from injury to means of support said in Iszler v. Jorda (N. D.) 80 N. W. (2d) 665, 668, 64 A. L. R. (2d) 696, 701:

---

[2]Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875; Lund v. Village of Watson, 260 Minn. 273, 109 N. W. (2d) 564; and Murphy v. Hennen, 264 Minn. 457, 119 N. W. (2d) 489.

[3]Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875.

"* * * we think it clear that the evidence shows no injury to means of support. These plaintiffs were in comfortable circumstances prior to William's death. They remained in such circumstances, afterwards. There is no evidence whatever in the record that William's death in any way affected the standard of living they had been maintaining or forced them to exercise any economies they had not therefore exercised. They were able to and did hire a man to do some of William's work and as far as the record shows their farming operations continued upon the same scale as before. It is true, that their net income may be somewhat less but diminution of income does not of itself constitute an injury to means of support."[4]

From an examination of the authorities, the general rule seems to be that to recover in an action for injury in "means of support" the plaintiff must show that in consequence of the wrongful acts complained of the plaintiff's standard of living or accustomed means of maintenance has been lost or curtailed so that he has been reduced to a state of dependence by being deprived of the support which he had theretofore enjoyed. But as pointed out in Iszler v. Jorda, *supra,* the mere fact of diminution of income does not of itself constitute an injury to means of support. 30 Am. Jur., Intoxicating Liquors, § 534; Volans v. Owen, 74 N. Y. 526, 30 Am. R. 337.

An examination of the record satisfies us that the plaintiffs here have not shown that the minor's death has in any way affected their income or standard of living, or that they will be subjected to future expense by reason of the minor's death.

Affirmed.

---

[4]In the Iszler case it was held that destruction of the right of parents to the earnings and services of the minor son and the payment by the father of the minor son's funeral expenses constituted an injury to "property" within the meaning of the Civil Damage Act. That particular issue is not before us in this case.