ROBERT STEVENS *et al.*, Plaintiffs-Appellants, *v.* B & L PACKAGE LIQUORS, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 78-16

Opinion filed November 16, 1978.

G. MORAN, J., dissenting.

Brazitis, Croegaert, Bowen & Miller and Bowen & Miller, both of Olney (Jerry Doyle Miller, of counsel), for appellants.

Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon (Glenn E. Moore, of counsel), for appellee James W. Koon, Sr.

Douglas A. Enloe, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee B & L Package Liquors, Inc.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff Robert Stevens, Sr., brought this action pursuant to the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135). The three defendants are dramshops located in Olney, Illinois, which allegedly provided liquor

to James Hemrich, Jr., who then caused the death of plaintiff's wife and minor daughter in an automobile collision. The complaint consisted of 15 counts, only three of which are involved in this appeal. These latter counts claim injury to the plaintiff's means of support by reason of the death of Karen Stevens, age 12 at the time of her death. Defendants each filed motions for summary judgment on the above counts, which motions were granted by the Circuit Court of Richland County on November 14, 1977. The court having found no reason to delay enforcement or appeal of the judgment, plaintiff promptly instituted this appeal.

On November 28, 1975, Judy Sue Stevens (plaintiff Robert Stevens, Sr.'s wife) and Karen Stevens (plaintiff Robert Stevens, Sr.'s daughter) were driving the family automobile in a northerly direction on Route 130 in Richland County, Illinois. At the time of the accident James Hemrich, Jr., was traveling south in the northbound lane of Route 130, attempting to pass another southbound vehicle. Both Judy Sue and Karen Stevens died as a result of the collision of the two automobiles near the center line of the highway. Plaintiff alleges in his complaint that James Hemrich, Jr., was intoxicated at the time of the accident as a result of the defendants providing him with alcoholic beverages earlier that afternoon. Finally, plaintiff alleges that because of the deaths of Judy and Karen Stevens he has been injured in his means of support as contemplated by the Illinois Dramshop Act.

Through the parties' pleadings, interrogatories, affidavits and discovery deposition of Robert Stevens, Sr., it appears that at the time of the accident the deceased, Karen Stevens, was 12 years of age and her brothers, Robert, Jr., and Alan, were 10 and 6 respectively. In 1970 their mother, Judy Sue, became employed at the International Shoe Company in Olney, Illinois where she worked 5½ days a week. In 1973, when Karen had attained the age of 10, she began to take an active role in the management of the Stevens household. Not only did Karen assume sole responsibility for the care of her younger brothers, but she prepared the morning and evening meals, washed the bulk of the family's clothes and performed most of the general household duties such as doing dishes and making beds. In response to defendants' interrogatories, plaintiff filed copies of joint income tax returns for the years 1971 to 1975. These records indicate that plaintiff's adjusted gross income was $10,850 in 1971, $11,378 in 1972, $13,862 in 1973, $13,582 in 1974 and $13,744 in 1975. In addition, plaintiff claimed child care deductions of $660 in 1974 and $750 in 1972 and 1973. No child care deduction was claimed in 1975, the year during which plaintiff alleges Karen exclusively performed these services.

Plaintiff argues that Karen's services constituted a "means of support" of the family household, injury to which is compensable under the Dramshop Act. Plaintiff contends that had Karen not contributed the

services plaintiff would have had to hire a babysitter as in the past or Judy Sue Stevens would have had to reduce her weekly hours at the shoe factory, thus depleting the family's net income. Appellant admits that no Illinois court has decided the precise issue raised here.

■■■ In all Illinois decisions interpreting the Dramshop Act, we find no persuasive authority for plaintiff's proposition that "means of support" encompasses ordinary household services performed by an unemployed 12-year-old girl who resides with her parents. The general rule in this State is that in order for a plaintiff to recover for loss of "means of support," the person injured must have rendered support to that plaintiff. (*Shiflett v. Madison*, 105 Ill. App. 2d 382, 245 N.E.2d 567 (1st Dist. 1969); *Robertson v. White*, 11 Ill. App. 2d 177, 136 N.E.2d 550 (1st Dist. 1956).) This support as construed by the Illinois courts is measured in such tangibles as the loss of wages and inability to continue earning a living, and not routine domestic chores and services. (See *McMahon v. Sankey*, 133 Ill. 636, 24 N.E. 1027 (1890); *Edenburn v. Riggins*, 13 Ill. App. 3d 830, 301 N.E.2d 132 (3d Dist. 1973); *Pearson v. Renfro*, 320 Ill. App. 202, 50 N.E.2d 598 (2d Dist. 1943).) We note that Illinois Pattern Jury Instruction, Civil, No. 150.14 (2d ed. 1971), which defines "means of support," is consistent with the above decisions:

> "The phrase, 'means of support' includes the necessities of life, and comforts as well. Whatever lessens or impairs the ability to supply suitable comforts which might reasonably be expected from the person who furnished support, *considering his occupation and capacity for earning money*, may be regarded as lessening or impairing the 'means of support' referred to in these instructions." (Emphasis added.)

The cases cited by plaintiff do not support his contention that voluntary household services by a minor fall within the definition of "means of support." For example, in *Meidel v. Anthis*, 71 Ill. 241 (1874), *overruled on other grounds in Lowry v. Coster*, 91 Ill. 182, 185-86 (1878), a wife of a farmer brought suit against a seller of intoxicating beverages alleging an injury to her means of support by reason of her husband's inability to cultivate his fields because of a broken leg sustained while intoxicated. The court found that the husband's capacity to cultivate his land could constitute a "means of support." The court added that such means of support "embraces all those resources from which the necessaries and comforts of life are or may be supplied, such as lands, goods, salaries, wages or other sources of income." (71 Ill. 241, 246.) It is this language which plaintiff claims is sufficiently broad to encompass situations such as loss of domestic services. Although this statement independently appears to support plaintiff's position, it must be read in its proper context. The *Meidel* decision deals with a person who is engaged

in the business of farming, not a child who lends a helping hand at home. In addition, there is language in *Meidel* which indicates that "means of support" is limited to situations where one is engaged in an occupation:

> "Although the plaintiff's husband was not an ordinary laborer, depending on wages for the support of himself and family, still the proceeds of his labor, in cultivating a field, were the only means of support of plaintiff * * *. We think, then, if his capacity to cultivate land—and that was his avocation—was sensibly diminished by the act of the defendant, she was injured in her means of support * * *." 71 Ill. 241, 246.

In *Weiner v. Trasatti,* 19 Ill. App. 3d 240, 311 N.E.2d 313 (1st Dist. 1974), another case relied on by plaintiff, a husband as executor of his wife's estate for his benefit and the benefit of his sons brought suit under the Dramshop Act alleging loss of means of support when his wife was killed by a vehicle driven by an intoxicated person. The wife had been employed at the American Photocopy Company and had worked with her husband in the family delicatessen. The court in reversing the judgment of the lower court concluded that there was evidence from which a jury could find that plaintiff suffered loss of means of support when the wife was killed. Although the court alluded to the contribution of domestic services as being a component of the means of support, it was clearly dicta and not controlling. As Judge Jones states in *Martin v. American Legion Post #784,* 66 Ill. App. 3d 116, 119, 383 N.E.2d 672, 675, "[t]he *Weiner* case does not stand for the proposition that the performance of everyday, domestic chores is sufficient to maintain a 'means of support' action under the Dramshop Act." The critical element in *Weiner* was the fact that the wife was a wage earner who contributed to the family's support.

Other Illinois decisions which deal with allegations of loss of means of support under the Dramshop Act based on the death of a minor likewise do not support plaintiff's position. (See *Martin v. American Legion Post #784; Robertson v. White.*) In *Martin,* of the four minor girls killed as a result of an automobile collision, Tammi, age 9, had performed various household duties while Vicki, age 16, had earned money babysitting and had given some of the earnings to her mother. Plaintiffs, who were the executors of the estates of their daughters, admitted that none of the children had provided funds for the support of plaintiffs. The court found no authority for the proposition that the performance of domestic services was sufficient to maintain a means of support action under the Dramshop Act and consequently concluded that plaintiffs were not entitled to relief. The only case cited by the appellant which upheld a judgment for loss of support by reason of a minor's injury is *Pearson v. Renfro.* In that case, however, the minor, who became 21 years old one

week after the injury, had dropped out of school, had been earning his own money for five years and had contributed weekly funds to his mother for the laundry and newspaper.

■■■ Plaintiff also argues that had Karen not contributed the household services plaintiff's wife would have had to reduce her working hours at the factory thereby causing a reduction in the family's income. In essence, plaintiff seeks to recover for the potential loss of the wife's income in the same counts in which he claims injury to the means of support by reason of Karen's death. Considering that count I of the complaint is a claim for loss of support furnished by the wife, plaintiff twice seeks recovery for the same income. It is well settled that there cannot be two recoveries for only one injury. *Shiflett v. Madison,* 105 Ill. App. 2d 382, 389, 245 N.E.2d 567, 570 (1st Dist. 1969).

■■ In conclusion, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." (Ill. Rev. Stat. 1975, ch. 110, par. 57.) In the present controversy, we believe that the voluntary domestic services contributed by Karen, a minor, for the benefit of her father and brothers can not constitute a "means of support" as used in the Dramshop Act. Accordingly, the judgment of the Circuit Court of Richland County granting defendants' motions for summary judgment is affirmed.

Affirmed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

Traditionally, Illinois courts have given a broad construction to the phrase "means of support" as used in the Dramshop Act. As early as 1874 our supreme court held, in accordance with the Ohio Supreme Court in *Schneider v. Hosier* (1871), 21 Ohio St. R. 98, that "means of support" in a general sense "embraces all those resources from which the necessaries and comforts of life are or may be supplied, such as lands, goods, salaries, wages or other sources of income. In a limited sense, it signifies any resource from which the wants of life may be supplied." (*Meidel v. Anthis,* 71 Ill. 241, 246, *overruled on other grounds in Lowry v. Coster,* 91 Ill. 182, 185-86.) Of course, this does not signify that "means of support" is to be equated with "pecuniary injuries," the more inclusive measure of damage employed in wrongful death cases. (*Howlett v. Doglio,* 402 Ill. 311, 83 N.E.2d 708; *Robertson v. White,* 11 Ill. App. 2d 177, 136 N.E.2d 550; *McClure v. Lence,* 345 Ill. App. 158, 102 Ill. App. 546.) However, in

Illinois any diminution of actual support constitutes injury within the Dramshop Act; that is, whatever lessens or impairs the ability to supply the necessities and suitable comforts of life lessens or impairs the family's means of support.

By granting summary judgment in defendants' favor, the trial court found, in effect, that as a matter of law, Karen Stevens was not contributing to the plaintiffs' support. It is axiomatic that summary judgment should only be granted where from the pleadings, affidavits and exhibits in the case, no genuine issue of material facts exists for the trier of fact. Plaintiff need not prove his case at the pleadings stage. He need only present some factual basis that would arguably entitle him to judgment under the applicable law. I believe a state of facts could exist under the pleadings, affidavits and exhibits in this case wherein a jury could reasonably find that Karen Stevens' death impaired Robert Stevens, Sr.'s ability to provide for his sons. To the extent that his ability to support Robert, Jr., and Alan was depleted by sums necessary to provide substitute babysitting, plaintiff has been injured in his "means of support." Although it appears from plaintiff Robert Stevens, Sr.'s affidavit in this case that plaintiff and his two sons assumed Karen's household chores, nowhere is there any indication that a similar arrangement occurred with regard to the babysitting services. As a child matures, he or she takes on added responsibilities, and when those services become so vital to the family's support that, if lost, a hired replacement is necessary, then I think an injury to "means of support" has occurred.

Appellees rely on a Minnesota case, *Bundy v. City of Fridley* (1963), 265 Minn. 549, 122 N.W.2d 585, for the proposition that a youngster who performs the kind of service at issue in this case does not provide a means of support for his parents. This case is inapposite for several reasons. We note initially that the published opinion in *Bundy* is unclear as to the degree of "assistance" rendered by the deceased 10-year-old; whereas, in the instant case Karen Stevens was solely responsible for the services which were performed by her without adult supervision. In addition, the *Bundy* court expressly stated that plaintiffs did not contend that their deceased contributed financially to the support of the family. On the contrary, counts X, XI and XIV of the complaint in this case expressly allege that Karen Stevens contributed financially to the support of her family. Finally, unlike Illinois, case law construction of the Minnesota statute requires a showing of post-injury dependence as a condition to recovery for injury to *means of support*.

At one point in its opinion the majority characterized the activity in question as "a child who lends a helping hand at home." I agree that plaintiff would be hard-pressed to bring that kind of assistance within the definition of "means of support"; however, at this stage in the case, he

should not be precluded from showing that Karen's contributions went beyond lending a helping hand at home to providing a valuable and essential service of an occupational nature and for which a ready market exists. A comparison of plaintiff's previous income tax returns demonstrates the monetary value of Karen's services. In my opinion, to deny appellant an opportunity for recovery merely because Karen Stevens did not have cash in hand to contribute to the support of her family is nothing more than elevating form over substance. By assuming all babysitting duties for her family, Karen increased the amount of money available for them to possess the necessities and comforts of life. I fail to understand how this could lead to a double recovery as the majority reasons.

Finally, while statutes which are penal in character should ordinarily be strictly construed, it has frequently been held that the Dramshop Act in question here is remedial in character and thus should be construed to suppress the "mischief involved and advance the remedy therein provided." (*Lester v. Bugni,* 316 Ill. App. 19, 29, 44 N.E.2d 68.) For these reasons, I would reverse the trial court's entry of summary judgment in favor of the defendants on the counts in question.